### WALKER v. VAN VALKENBERG.
(No. 7033.)

(Court of Civil Appeals of Texas. Austin. Nov. 10, 1926. Rehearing Denied Dec. 8, 1926.)

1. **Brokers** ⬥⟲55(1)—**That agent making sale was vendor's son did not make vendor liable for commission to one who had previously negotiated with purchaser.**

That agent who completed sale of real estate was vendor's son, who officed with him and was agent for him in other matters, and sometimes closed deals with other agents for him, did not make vendor who placed property in hands of his son and another for sale liable for commission to one who had previously negotiated with purchaser.

2. **Brokers** ⬥⟲55(1)—**That deed was made to another to avoid controversy regarding commissions with agent, after sales agreement was made, did not establish fraud.**

That agent, who closed sale of real estate, had deed made to D., who conveyed to purchaser to avoid controversy regarding commis-

sions with another agent who had negotiated with purchaser, did not of itself establish fraud.

3. **Brokers** ⬥⟲55(1)—**Owner was liable for commission only to agent who first completed land sale, even though another agent had negotiated with purchaser.**

Owner had right to consummate sale of real estate with agent who had finally brought negotiations to close, and was not liable to another agent who had negotiated with purchaser and who may have been instrumental in getting purchaser in mental attitude of buying property at owner's price.

Appeal from Dallas County Court at Law, No. 2; Wiley A. Bell, Judge.

Suit by F. G. Van Valkenberg against A. W. Walker. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Helen M. Viglini, of Dallas, for appellant. A. W. Walker, Jr., of Austin, for appellee.

McCLENDON, C. J. Suit by F. G. Van Valkenberg, appellee, against A. W. Walker, appellant, for real estate agent's commission of 5 per cent. on sale of a lot in Dallas, Tex. Trial to court. Judgment for appellee.

The controlling question in the case is whether appellant, defendant below, was entitled to judgment as a matter of law, under the following well-established principle:

"Where property is placed for sale with two or more real estate brokers, the owner, provided he remains neutral towards the several brokers, is liable for commissions only to the one who first completes a sale, or, if the owner has not delegated authority to conclude the transaction, to the one who first produces a customer, able, ready, and willing to purchase the property on terms agreeable to the owner." Ann. Cas. 1916B, p. 978, note.

The decision in Edwards v. Pike, 49 Tex. Civ. App. 30, 107 S. W. 586, cited with approval in Keener v. Cleveland (Tex. Com. App.) 250 S. W. 151, Bellis v. Kendall (Tex. Civ. App.) 157 S. W. 427, Brown v. Odneal (Tex. Civ. App.) 239 S. W. 350, and McFarland v. Martin (Tex. Civ. App.) 258 S. W. 879, was rested upon this principle. For other cases of like import see above note in Ann. Cas. 1916B, pp. 978, 979.

The essential facts are without dispute: Prior to April 3, 1922, appellant had listed the property with appellee. On that date he wrote appellee, advising that, after April 8th, his son, James Walker, would have exclusive agency of all his property in the addition in which the lot was located. Early in July, 1923, the property was again listed with appellee at $3,000 cash, out of which a 5 per cent. commission was to be paid. Appellee's employé Johnson showed the lot to James sometime in August, 1923, and endeavored to effect a sale, but James was not willing to pay more than $2,750 for the property,

⬥⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and the negotiations seemed to have fallen through. Johnson testified:

"The defendant, Walker, turned that offer down. At the time I told him I thought I could get James to go up on it; that was the only offer Mr. James ever made me. I don't know whether it was the only offer he ever made in the office."

The only controversy between Johnson and appellant in this regard is that the former states he communicated the name of the purchaser to appellant, and appellant did not recall this fact. There was no further communication between appellant and appellee regarding James until after October 3, 1923. Appellant left the state the latter part of September, 1923, and did not return until the middle or latter part of October, 1923. After the James offer was rejected and prior to appellant's leaving the state, appellee, through another employé Wade, effected an agreement of sale with a Mrs. Nedder, at $3,250, which was part cash and part notes. It was ascertained that Mrs. Nedder was a married woman, and appellant required her husband's signature to the notes. The trade, however, fell through because Mr. Nedder would not join in the notes. Shortly before October 3, 1923, the exact date not being given, James telephoned to James Walker one evening and offered $2,750 for the lot. The offer was declined, and counter proposition made of $3,000 net. These negotiations resulted in a contract of sale, dated October 3, 1923, by which James was to purchase the property at $3,000 cash. James Walker had known James for some time, and had sold him another lot in the same addition. He had also advertised the lot in question for sale. The day after this contract was executed, appellee having learned of it through a newspaper item, he notified James Walker that he expected a commission on the sale. James Walker sent a deed with grantee's name in blank to his father, which deed was executed and acknowledged in the state of Washington and returned to James Walker. When this deed was returned, the name of Donovan was inserted instead of that of James, and Donovan later conveyed to James. With reference to this matter, James Walker testified:

"After the contract had been signed Mr. Van Valkenberg sent one of his agents up to the office with a letter, stating that he had shown this property at a previous time to Mr. James, and that he was going to make a claim for commission. I told this man I did not intend to pay a commission, because this was made to me as agent. Then I said to go ahead and make the deed to Donovan, because Donovan was the purchaser of the lot in the first place, and to make a deed to him might do away with some contention."

The evidence showed that James Walker was a real estate agent and officed with his father, and that, besides acting as agent in the sale of his father's real estate, he also acted for him in closing up deals with other agents and with reference to other business. Appellant did not know that James was the purchaser of the property until he returned to Texas. He paid his son a commission on the sale. We quote the following from his testimony:

"I don't know whether Mr. Van Valkenberg claimed a commission before that deed was delivered or not. My son was my agent. Anything he did in the matter I will stand by."

We think this is the substance of all the testimony that has bearing upon the issue presented.

Appellee contends that the rule in Edwards v. Pike does not apply in this case for the following reasons: First, because James Walker was the son of appellant, officed with him, was agent for him in other matters, and sometimes closed up deals with other agents for him; and, second, because the making of the deed to Donovan showed an effort to avoid paying a commission to appellee.

[1] Appellant had the right to place his property with any agent he saw fit, and the fact that one of the agents employed was his son, who acted for him in other matters, does not alter the situation. Appellee knew that James Walker was so employed and took whatever chances the situation presented.

[2, 3] The fact that James Walker had the deed made to Donovan in order to avoid controversy regarding commissions does not of itself establish fraud. At the time this was done, the agreement with James had been consummated, and a written contract signed. Under Edwards v. Pike the rights of the parties were fixed at that time. Appellant had the right to consummate the sale with the agent who had finally brought the negotiations to a close, and was not liable to another agent who may have been instrumental in getting the purchaser in the mental attitude of buying the property at the owner's price. The evidence wholly fails to show any ground whatever of liability to appellee at the time the negotiations between James Walker and James were reduced to a binding written agreement. What transpired after that time could not affect the rights of the parties. It might be a circumstance, if there were any evidence otherwise of fraud, but, coming as it did after the rights of the parties were fixed, and being explained on the reasonable ground of an attempt to avoid a controversy, which had already arisen, it was not sufficient standing alone to raise the issue of fraud.

The facts we think clearly bring the case within the rule of Edwards v. Pike.

The judgment of the trial court is reversed, and judgment rendered for appellant.

Reversed and rendered.