[Civil No. 4620. Filed April 23, 1945.]

[158 Pac. (2d) 159.]

LUCY M. FINK, Appellant, v. STANLEY WILLIAMSON, Appellee.

Messrs. Darnell & Robertson, for Appellant.

Mr. Clifford R. McFall, for Appellee.

STANFORD, C. J.—This is an appeal from the superior court. No findings of fact were made, but before judgment the court rendered an opinion setting forth the views of the court on different phases of the case.

We will refer to the parties as plaintiff and defendant as designated in the trial court.

Plaintiff was a duly licensed real estate broker in Tucson, Arizona, and defendant was the owner of the property involved. Plaintiff, the broker, showed the property of defendant to a Mr. and Mrs. Samuel E. Hostetter on March 10, 1942. The defendant was temporarily in Los Angeles, California. After showing the property to the Hostetters, plaintiff sent the following telegram to defendant:

"Mar. 10/42

"Mrs. Albert Fink—% Mrs. F. A. Price
" % Gaylor—Wilshire Blvd.
"Los Angeles, Calif.

"Have shown Mr. Hostetter prospective buyer your 10½ acre and residence Oracle Road property. Please

answer return wire Western Union collect authorizing me to sell, giving lowest cash price including regular real estate board commission. Please state furnishings that go with property.

"Stanley Williamson—Broker"

That same evening, March 10th, the defendant wired the plaintiff as follows:

"March 10, 1942

"Stanley Williamson, Broker
"Tucson, Ariz.

"I authorize Mr. Williamson, Broker, the right to sell my ten and half acre estate in Palosverdes for Thirty Two Thousand Dollars for cash No furnishings included at this figure however would consider selling many things reasonable. Property has clear title.

"Mrs. Albert Fink."

When plaintiff received an answer to his telegram from defendant he telephoned Mr. Hostetter that he had received a wire from her and that she wanted $35,000 for the property furnished.

After plaintiff had shown the Hostetters the property during the day of March 10th, Mr. Hostetter went immediately to the office of the Arizona Trust Company, in Tucson, and started negotiations there with Mr. R. A. Schendel, a realtor salesman, for the purchase of the property. The original figure submitted to Schendel was the same as the one submitted to Williamson. Mr. Schendel talked that evening with defendant by telephone, but defendant claims that she did not know that Hostetter was Schendel's customer, and the defendant after negotiations and reduction in price closed the deal with Schendel for the property to be purchased by his customer. Defendant returned to Tucson March 19th, and signed a preliminary agreement on March 21st in the office of the Arizona Trust Company.

Williamson continued negotiating with the Hostetters, and under his testimony it is shown that he saw

them several times during the week he first showed them the property and gave them information they wanted. We take the following from his testimony:

"Q. Did you see them again after that? A. I saw them the next day, Friday.

"Q. And did you give them any further information at that time? A. I talked to them again about the property at the hotel. They said that they definitely dropped the matter of buying a piece of property in Tucson, weren't interested in the Fink property; that 'we are going back to Kansas, and packing up and getting ready to go; if we want any more information that we will contact you.' "

On March 24th, after plaintiff had heard that defendant had sold her property to the Hostetters, he wrote her a letter and demanded his commission for the sale.

The trial court entered its judgment in favor of the plaintiff and against the defendant in the sum of $1300 and costs.

The sale of the property was by R. A. Schendel and commission paid to him.

The question for determination here is, was the plaintiff entitled to a commission? To entitle him to a commission he would have to be the efficient, proximate and procuring cause. Evidently the court so found, and the evidence discloses, that plaintiff was the immediate and efficient cause of the sale of the property to the purchaser. This is shown by the testimony of Mr. Hostetter.

"Q. You did not know where the Fink property was? A. No, sir.

"Q. You had never seen it until Mr. Williamson had shown it to you? A. I had passed it a number of times.

"Q. Did you know the place you had passed was the Fink place? A. No, not by name.

"Q. Did you know where to go to locate the Fink

place? A. I don't believe I could have found the place without directions.

"Q. Mr. Schendel had never shown you the place before that? A. No, sir.

"Q. You had been out with Mr. Schendel a number of times. A. That is correct.

"Q. And he had not shown you the Fink place? A. No."

■ We think the trial court's ruling under the evidence, that plaintiff was the efficient or procuring cause of the sale of the property, is justified by the expressions of this court. In *Garver* v. *Thoman,* 15 Ariz. 38, 135 Pac. 724, 727, Justice Ross expressly stated:

" . . . if it is found that commissions should be paid, judgment should be for the one who was the *immediate* and *efficient* cause of the sale. (Italics ours.)"

In the opinion of the court in *Miller Cattle Co.* v. *Chambers,* 36 Ariz. 282, 285 Pac. 277, 279, are many observations that are pertinent to the inquiry here.

" . . . The very purpose of a broker's agency is to locate and interest prospective purchasers of his principal's property. If the agency is not exclusive, the owner may sell his property to any one *not found by the broker.* (Italics ours.)"

The case of *Hafner* v. *Herron,* 165 Ill. 242, 46 N. E. 211, is referred to in the decision with the following comment:

" . . . the broker not only found the purchaser, but introduced him to the principal before the sale was consummated. . . . "

Other decisions are also referred to in this opinion which indicate that the broker who finds and introduces the purchaser is the immediate and efficient cause of the sale.

The decision in *Fornara* v. *Wolpe*, 26 Ariz. 383, 226 Pac. 203, seems to us to be determinative of the question here. In that case the agent, as in the case at bar, brought the property involved to the notice of the lessee and introduced him to the owner. The owner later closed the deal directly with the lessee. The brokers were allowed their commission. The court said, 26 Ariz. at page 392, 226 Pac. at page 206:

" . . . While the pleading and proof are that appellee was given certain terms upon which the property would be leased, yet, if he brought it to the notice of the person who afterwards purchased it, the fact that the owners themselves consummated the deal and voluntarily took a less sum than that given appellee would not deprive the latter of his right to the commission. (Citing cases.) In *Plant* v. *Thompson*, 42 Kan. 664, 22 Pac. 726, 16 Am. St. Rep. 512, the following syllabus appears:

" 'An agent employed to sell real estate, who first brings it to the notice of the person who ultimately becomes the purchaser, is entitled to his commissions on the sale, although the latter is effected by the owner of the property, nor can the owner evade his liability to pay the agent his commissions by selling for a sum less than the price given the agent, when the reduction is made of the owner's own accord.' "

In their briefs defendant places considerable reliance on 12 C. J. S., Brokers, p. 207, § 91. The rule applicable to this case, however, is set forth in Section 92, p. 213, as follows:

"Where several brokers are employed to negotiate or effect the same transaction, the broker who first succeeds and is the procuring cause of the transaction is entitled to the full commission, to the exclusion of the other brokers. A broker may be the procuring cause of a transaction, so as to be entitled to compensation, even though the transaction is closed or consummated by the principal through the medium, or with the assistance, of another broker, . . . ."

The case of *Cunliff* v. *Hausman,* 97 Mo. App. 467, 71 S. W. 368, has a fact situation very similar to the cause under consideration. There a real estate dealer put in communication with the owner of a lot a prospective purchaser. The agent was authorized to sell at a certain price. The purchaser postponed the deal, went to another agent of the owner and received a purchase price from him at a slightly reduced price. It was held that the first agent was entitled to a commission for the sale. The effect of the decision is that the first agent was the procuring cause of the sale. In the case at bar the plaintiff and not the agent who consummated the deal, was the *procuring* cause.

█ The owner of property, listing it for sale with different brokers, cannot reduce the selling price to one and not the other provided the brokers are showing the property to the same customer. The seller must remain neutral to rival brokers. This statement is supported by the case of *Hovey* v. *Aaron,* 133 Mo. App. 573, 113 S. W. 718, 721, wherein it is stated:

" . . . If defendant, while plaintiff's authority to sell stood unrevoked, chose to sell the property, either in person or through another agent, to a customer procured by the efforts of plaintiffs for a less price than that which plaintiffs were authorized to offer, that was his privilege, but he will not be permitted to reap the fruits of plaintiffs' labor and then deny them their just reward. . . . "

This point is also set out in the case of *McGuire* v. *Sinnett,* 158 Or. 390, 76 Pac. (2d) 472, 476, from which we quote:

"In the case before us the trial court also found that the plaintiff was the procuring cause of the sale of the property to Bohmann. There is, as hereinbefore pointed out, little conflict in the evidence. Taking the testimony in the light most favorable to the plaintiff, we are of the opinion that there is sufficient evidence in the record to support this finding. In this connec-

tion, we find in 4 R. C. L. 320 the following statement: 'Where a prospective purchaser has been introduced to the owner by one broker and the negotiations are pending and have not fallen through, the owner can not, with knowledge of the facts, complete the purchase with another agent, and avoid his liability for the commission due to the first broker. Thus the law will not permit one broker who has been intrusted with the sale of land, and is working with a customer whom he had found, to be deprived of his commission by another agent stepping in and selling to the customer for a price less than the first broker is empowered to receive. But if a broker who has procured a purchaser reports his offer to his principal without identifying the person from whom it comes, he can not recover commissions in case of a subsequent sale through another broker at the same price to the same purchaser, unless it appears that the principal knew these facts or that notice was given him by the broker before the completion of the contract and payment of commissions to the second broker.' "

 It will be seen from the foregoing authorities that where an owner employs different brokers he must not only be neutral as between the brokers, but if a purchaser is introduced to him by one broker, and the negotiations through that broker have not fallen through, the owner may not, with the knowledge of the facts, sell to such purchaser through another agent to the exclusion of the first agent. If the owner completes the deal through another agent under these circumstances, the owner is liable to the first agent. Before this deal was finally completed by the defendant, it seems obvious from the testimony, that she had complete knowledge of the fact that the buyer was the one who had been first produced by the plaintiff. In any event before she paid the commission to Schendel, she was fully advised that plaintiff had procured the purchaser.

The record shows that on March 21, 1942, the defendant signed an instrument agreeing to sell the prop-

erty to Mr. Hostetter. At this time she became aware that Hostetter was the man who had been produced by the plaintiff. She must have been under the belief at that time that the plaintiff was entitled to a commission if she sold directly to Mr. Hostetter. The record discloses that the defendant gave a deed to the property involved to Pima Canyon Properties Company, a corporation, dated March 24, 1942, although not acknowledged until the 25th. This deed was recorded in the county recorder's office on the last named date. On March 24th deed was executed by Pima Canyon Properties Company to Samuel E. Hostetter and Velma E. Hostetter, husband and wife. This sale, however, was not recorded until March 30, 1942. These proceedings would indicate lack of good faith required by the authorities we have referred to. There was no occasion for the defendant to give her deed to the property to another except the purchaser. The bill of sale to furnishings and other things was dated March 24th, the same date as the deeding of the property to Pima Canyon Properties Company, and the bill of sale was made direct to the Hostetters.

This evidently was the reason for the statement by the trial court in its written opinion, given prior to the judgment, and from which opinion we quote:

" . . . Suffice to say that she did sign a deed to the Pima Canyon Properties with some idea of keeping the true facts from Wiliamson and the world."

The facts in this case must govern us in our opinion, and must be considered in order that justice may be done, and regardless of other cases that differ with our opinion we must say that the facts could not be similar to those stated herein. In the case of *Armour & Co.* v. *Wantock* reported in 323 U. S. 126, 65 Sup. Ct. 165, 168, the following language is used:

" . . . It is timely again to remind counsel that words of our opinion are to be read in the light of the facts of the case under discussion. . . . "

We find there is sufficient evidence to support the judgment of the trial court.

Judgment is affirmed.

MORGAN, J., concurs.

LaPRADE, J. (Dissenting).—I dissent for the reason that I cannot agree with the conclusions reached by the other two members of the court. Before the court can decree the law it must have before it a clear understanding of the facts. The factual situation in this case is as follows, disclosed by the transcript of evidence, the exhibits in the case, and the admissions in the briefs.

On March 9, 1942, the prospective purchaser sought out the plaintiff and told him that he had heard of the Fink place and was desirous of seeing it. At that time the plaintiff had no listing of the Fink property. On March 10th, the plaintiff took the prospective purchaser to the premises and thoroughly inspected them. When the plaintiff and the purchaser arrived at the premises there was displayed on the premises a "For Sale" sign belonging to the Arizona Trust Company, a realty concern in Tucson. The wording on this sign indicated that the property would be shown by appointment only. The purchaser testified that he was ill at ease in going upon the premises and that he considered that he was violating the privacy of the premises in entering without invitation. Nevertheless, the plaintiff assured him that it was all right and they gained admission from the maid, the owner being in California. Immediately upon returning to the city, plaintiff and purchaser separated. The purchaser went immediately to the office of the Arizona Trust Company and there interviewed a Mr. R. A. Schendel, a salesman of that company. The purchaser had theretofore been out with Mr. Schendel viewing other property, and apparently desired to do business with Mr.

Schendel. The purchaser testified that he was not pleased with the plaintiff and would not have concluded any purchase through the plaintiff. On March 10th, after showing the prospective purchaser the premises, the plaintiff telegraphed Mrs. Fink as set forth in the majority opinion. That same evening, defendant-owner telegraphed plaintiff authorizing him to sell the property for $32,000 cash—'' . . . No furnishings included at this figure, however, would consider selling many things reasonable. . . . '' That same evening, March 10th, Mr. Schendel called the owner on the telephone, informed her that he had a cash purchaser, and asked her for a price at which he might quote the property. She gave him the identical information that she had given to the plaintiff. Mr. Schendel *did not disclose to the defendant the identity of his prospective cash purchaser,* and at no time during the entire proceedings did Mr. Schendel disclose to the defendant the name of his purchaser, and she did not learn the name of the purchaser until she was asked to sign a deed on March 21st. On the evening of March 10th upon the receipt of the telegram from the owner, the plaintiff communicated with the prospective purchaser, Mr. Hostetter, by telephone and told him that Western Union had called him and had read to him the contents of the telegram, and in this behalf plaintiff testified as follows, in reciting what he told the purchaser concerning the contents of the telegram, that ''it wasn't entirely clear to me just about the price but I estimated that the price would be $35,000 with the furnishings.'' That same evening, Mr. Schendel advised Mr. Hostetter that the owner had authorized a price of $32,000, unfurnished. Mr. Hostetter testified that in the telephone conversation plaintiff told him that the cash price of the property, unfurnished, was $35,000. Mr. Hostetter testified that this discrepancy of $3,000 caused him to be more suspicious of plaintiff and confirmed in his mind the ap-

praisal that he had theretofore formed of Mr. Williamson.

On the morning of March 11th, plaintiff contacted Mr. Hostetter and correctly advised him that the offer was $32,000 cash, without the furniture. On March 11th, through Mr. Schendel, Mr. Hostetter made a counter offer of $27,500 for the property and part of the furniture and a Pontiac Sedan, and to show his good faith deposited $1,000 with Mr. Schendel. This offer Mr. Schendel communicated to the owner in writing. On March 12th, Mrs. Fink in writing to Mr. Schendel offered to take $28,000 for the property with certain designated articles of furniture, or $28,500 cash with certain furniture and a Lincoln Zephyr Sedan. On March 12th, 13th, and 14th, Mrs. Fink and Mr. Schendel communicated with each other by telephone and telegraph regarding the sale and several counter offers made by Mr. Hostetter. These conversations resulted in an offer by Mrs. Fink to take $28,500. Then on March 15th, Mrs. Fink telegraphed Mr. Schendel wherein she confirmed the sale of $28,500 including furniture and Lincoln Zephyr. On March 16th, Mr. Schendel telegraphed Mrs. Fink as follows:

"Your property sold according to your second telegram March 15th. Contract signed in accordance with said telegram."

It thus appears that on March 15th Mrs. Fink by written documents had obligated herself to sell the property to an undisclosed purchaser. At this time Mr. Hostetter could have compelled her to convey the property by an action for specific performance, and she would have been legally obligated to execute a conveyance. This contract of sale was negotiated in its entirety by Mr. Schendel, not by the plaintiff. I take it to be from the majority holding that Mrs. Fink, at the time the deed was presented to her for her signature and when she then for the first time discovered

that Mr. Hostetter was the purchaser, should have refused to pay Mr. Schendel, and in an appropriate action brought both Mr. Williamson and Mr. Schendel into court for a determination as to who was entitled to the commission. The majority opinion indicates that if such an action had been prosecuted the court there would and should have decreed that Mr. Williamson was the efficient and procuring cause of the sale and that he was entitled to the commission.

I do not believe that the evidence supports the finding of the trial court that the appellee was the efficient and procuring cause of the sale. The rule set forth in *Kice v. Dugan,* 143 Ky. 676, 137 S. W. 240, 241, I believe is applicable here. It reads as follows:

"Our opinion is that, when property has been listed for sale with a number of real estate agents, the one who succeeds in bringing the seller and purchaser together and induces them to enter into the contract is the one who has earned the commission, and this is true, regardless of the question as to who first introduced the seller and purchaser."

This statement of the law was later approved in the case of *Al Koch Real Estate Co. v. Durrett,* 214 Ky. 162, 282 S. W. 1079. The headnote in this last case reads as follows:

"Broker, who had no exclusive agency to sell owner's property, and did nothing towards bringing about its sale, beyond advertising it and taking ultimate purchasers to see it, held not entitled to commissions, where procuring and efficient cause of sale was efforts of other brokers who brought about consummation of transaction."

In *Reynolds et al. v. Alexander,* 164 Miss. 860, 146 So. 305, 307, there appears the following statement of the rule which I believe to be applicable in the instant case. It is as follows:

"There is nothing to prevent a party having land for sale from listing it with more than one agent or

broker. If he lists it, without naming the terms of sale, with several parties, the one whose efforts first produce a purchaser is held to be entitled to the commission. But, where the terms of sale are named, the broker or real estate agent must produce a purchaser who is ready, willing, and able to buy upon the named terms; and, unless he has an exclusive agency, the seller may sell through another broker or real estate agent under different terms, unless the facts make it appear that the transaction was a mere subterfuge to defeat the broker of his commissions."

In *Terry* v. *Bartlett*, 153 Wis. 208, 140 N. W. 1133, 1135, there appears this language:

" . . . Defendant might place his property in the hands of as many agents or brokers as he saw fit, so long as no exclusive agency was given. When one of them produced a purchaser, he was at liberty to deal with him and to pay the agreed commission in case of a sale, without ascertaining whether any other agent or broker had offered the property to such customer; the owner being ignorant of such an offer having been made. . . . "

I think that the evidence affirmatively shows that the appellee by his own conduct alienated his prospect and precluded all possibility of making the sale. The trial judge in his memorandum opinion recognized that when Mr. Hostetter testified that he would not have bought the property through Mr. Williamson this would ordinarily preclude a recovery by Mr. Williamson, but the trial court then concluded that Mr. Hostetter was not justified in becoming dissatisfied with Mr. Williamson. The court further reasoned that Mr. Williamson did not legally alienate Mr. Hostetter by quoting him a price of $35,000 for the property, unfurnished, when Mr. Hostetter, within a period of an hour or so, was quoted the correct price of $32,000 by Mr. Schendel. The trial court justified its conclusion that Mr. Hostetter was not justified in becoming more suspicious of or dissatisfied with Mr.

Williamson when this incident occurred, as "Mr. Hostetter's interests were not jeopardized," inasmuch as his first offer of $25,000 was not accepted and that he finally secured the real estate for $24,000 and the furnishings and automobile for an additional $4,500. In other words, since Mr. Hostetter, through his own bargaining and with the aid and assistance of Mr. Schendel, saved himself some money, his interests were not jeopardized. All of this might be pertinent and have some legal effect upon the relationship between the parties if Mr. Williamson were suing Mr. Hostetter for breach of contract or for damages as a result of fraud or in some other type of legal action. I cannot see how the court can decide the legal responsibilities between Mr. Williamson and Mrs. Fink on the basis of whether or not Mr. Hostetter was justified in becoming dissatisfied with Mr. Williamson's representation. The fact is he was dissatisfied with him. Mr. Williamson could not conduct any negotiations with the owner looking toward the consummation of a sale for the reason that the purchaser would not and did not give him the opportunity.

There is no Arizona decision which has squarely passed upon the legal principle that a real estate broker may estop himself from asserting a right to a commission where his prospect becomes dissatisfied with his conduct. It has been stated, however, as a general principle of law in *Whitcomb* v. *Bacon,* 170 Mass. 479, 49 N. E. 742, 64 Am. St. Rep. 317, cited with approval in *Leadville Mining Co.* v. *Hemphill,* 17 Ariz. 146, at page 150, 149 Pac. 384, at page 386, in the following language:

"So where several brokers have each endeavored to bring about a sale which finally is consummated, it may happen that each has contributed something without which the result would not have been reached. One may have found the customer who otherwise would not have been found, *and yet the customer may refuse*

*to conclude the bargain through his agency*; and another broker may succeed where the first has failed. In such a case, in the absence of any express contract, that one only is entitled to a commission who can show that his services were the really effective means of bringing about the sale, or, to use the language of Phillips, the predominating efficient cause." (Italics supplied.)

I am of the opinion that a real estate broker may legally as well as in fact alienate his prospect, and, if the prospect subsequently purchases the property through another agent, the owner of the property will not be obliged to pay a double commission. It is one of the hazards of the brokerage game that a realtor must sell himself to the parties for whom he is negotiating, and his inability to retain the confidence of his prospect should certainly not be assessed against the owner of the property. I state again that I am of the opinion that the evidence disclosed that Mr. Williamson's efforts were not the efficient cause nor the proximate cause of the sale. With reference to this subject, I quote from the text in Corpus Juris Secundum:

"While it is not essential that the broker's efforts be the sole cause of the sale or other transaction, it is essential that they be the predominating effective cause, and they are not sufficient to entitle him to a commission where they are merely an indirect, incidental, or contributing cause or one of the links in a chain of causes. The broker may be held not to have been the procuring cause, even though he called the customer's attention to the property involved, showed it to him, gave him some information relative thereto, had some negotiations with him in reference to the transaction, or even influenced him to some extent. Also, he may be considered not to have been the procuring cause, even though he attended several conferences of the interested parties." 12 C. J. S., Brokers, p. 209, § 91.

Mr. Schendel's efforts were the real, effective, proximate, direct and efficient cause of Mr. Hostetter's pur-

chasing this property. Mrs. Fink knew nothing of the identity of Mr. Schendel's prospect; she did not know that Mr. Hostetter had become dissatisfied with Mr. Williamson and had gone to another broker. If his (Hostetter's) conduct was unfair to Mr. Williamson, she did not know it. As far as she was concerned she simply wanted to sell her property and it was immaterial through whom the sale was made. It had been listed with numerous agents for a long period of time. She was finally contacted by Schendel (at the instance of the purchaser) on behalf of an undisclosed principal, and after considerable "horse trading" she was induced to sell the real estate alone for $24,000. The credit for this work, and the bringing about of a meeting of the minds of the seller and the purchaser, can certainly go only to Mr. Schendel. Mr. Williamson could not lend any assistance—the purchaser would not let him.

The trial court and the majority members of this court have concluded that the owner was guilty of unneutral conduct and that her actions in being persuaded by the officers of the Arizona Trust Company to execute a deed to the Pima Canyon Properties, Inc., indicated a lack of good faith upon her part. But I ask: What did Mrs. Fink do prior to the time she obligated herself to sell the property that was unneutral? The trial court found that she did nothing. It was only the execution of the deed to the Pima Canyon Properties, Inc., which occurred after she had become obligated to sell that led the trial court to believe that she was unneutral. This matter has been settled in the case of *Walker* v. *Van Valkenberg* (Tex. Civ. App.), 291 S. W. 936, 937. In this case it was held that an act done after the rights of the parties have become fixed, such as having the deed made to a third person rather than to the real purchaser in order to avoid controversy regarding commissions, does not

of itself constitute fraud. The following pertinent language appears in this case:

"The fact that James Walker (agent who actually consummated the deal) had the deed made to Donovan (not the real purchaser) in order to avoid controversy regarding commissions does not in itself establish fraud. At the time this was done, the agreement with James (the real purchaser) had been consummated, and a written contract signed. Under *Edwards* v. *Pike* [49 Tex. Civ. App. 30, 107 S. W. 586] the rights of the parties were fixed at that time. Appellant (owner) had the right to consummate the sale with the agent who had finally brought the negotiations to a close, and was not liable to another agent who may have been instrumental in getting the purchaser in the mental attitude of buying the property at the owner's price. . . . "

The most serious consequence to follow from the majority opinion is this. It will preclude owners of real estate from listing their properties with several agents unless they are willing to subject themselves to litigation and the probability of being liable for two or more commissions. I believe it to be the law that an owner may list his property with one or more realtors at the identical selling price. One of these realtors may bring in a "hot" prospect and by bargaining with the owner finally bring about a sale at a lower price than was orginally quoted to all of the realtors, and, without subjecting the owner to litigation or the possibility of having to pay a double commission merely because the purchaser with whom the sale is closed has without the owner's knowledge been shown the property by another realtor. The owner is required only to be neutral between rival brokers. The term rival indicates open, known competition. If the owner of property has listed it with several brokers, he can certainly deal with any one of them, sell the property at a reduced price, and not have other brokers complain because of such reduction. It is only

in a case where two brokers are working on the same prospect, to the knowledge of the owner, and one of them is given a reduced price, which opportunity is not given to the other, that this doctrine of neutrality has any application.

The following quotation from the case of *Taylor* v. *Maddux, Marshall & Co.*, 1925, 55 App. D. C. 254, 4 Fed. (2d) 447, 448, sets forth the disposition that should be made in the instant case:

"Coming now to the case on its merits, we think there is no theory upon which the judgment below can be sustained. Taking the plaintiff's case in its most favorable light, it amounted merely to a competition between two agents for the sale of the premises. It is well settled that, in the absence of collusion between the owner and the purchaser, there can be no recovery by an agent who has failed in such a competitive race. The defendant in the present case had no dealings whatever with the purchaser. The purchaser sought out Strohecker (Schendel) and dealt with him as one of the defendant's agents, and it is immaterial that defendant may have been the first one to have found the purchaser. It is a case where the first one of two agents presenting a contract satisfactory to the owner is entitled to the commission, and the other agent, regardless of what service may have been rendered, is without remedy."

The judgment should be reversed with costs with instructions to dismiss the complaint.