373 P.2d 587

**L. B. GALBRAITH, doing business as L. B. Galbraith & Co., Appellant,**

**v.**

**J. B. JOHNSTON and Virgie Mae Johnston, his wife, Appellees.**

No. 6719.

Supreme Court of Arizona.

July 30, 1962.

Rehearing Denied Oct. 2, 1962.

Chester J. Peterson, Phoenix, for appellant.

Snell & Wilmer, Phoenix, for appellees.

STRUCKMEYER, Justice.

Plaintiff, L. B. Galbraith, a real estate broker doing business as L. B. Galbraith & Co. brought this action against J. B. Johnston and Virgie Mae Johnston, his wife, for a commission on the sale of real property allegedly due pursuant to the terms of a written real estate listing. The defendants thereafter joined in the action a second real estate broker, Joe J. Paterno asserting that Paterno's activities were the procuring cause of the sale. At the trial a jury returned a verdict in favor of Paterno and in favor of defendants against plaintiff. Judgments were entered accordingly and plaintiff appealed.

Prior hereto defendants were the owners of a farm near Stanfield, Arizona, consisting of approximately 400 acres devoted to the growing of cotton which they listed for sale with various real estate brokers. On August 24th, 1956, they entered into a written listing with plaintiff to sell for $160,000. Alternatively the listing provided that defendants would accept $142,800 net, if their equity was paid in cash. At defendants' insistence a nonexclusive listing was agreed upon. To accomplish this a printed form designed for use as an exclusive listing was modified by adding the words, "None (sic) Exclusive Listing" immediately following the printed body of the agreement. Certain portions of the printed body were stricken. In its pertinent parts the listing provided:

"For and in consideration of your listing my property, and your efforts to find a purchaser, I hereby appoint you my Agent, and hereby grant you the ~~sole and exclusive~~ right to sell my property described herein for a period of * * * days from date hereof, and thereafter shall remain an open listing until cancelled in writing by me, on the terms set forth here in or upon any other price, terms or exchange to which I may consent. I agree to pay you 5% of the selling price for your services, if sold or exchanged by you ~~or anyone else, including myself~~, while this contract is in force, or if sold within one (1) year after the expiration of this listing to anyone with whom you had negotiation prior to expiration.

\* \* \* \* \* \*

"None Exclusive Listing"

Following receipt of this listing plaintiff advertised the property for sale. In September of 1956, one C. L. Kenworthy, after reading one of these advertisements contacted plaintiff's office and inquired about the property. One of plaintiff's salesmen took Kenworthy and his wife to see the farm and spent about an hour showing it

to them. After being shown the farm Kenworthy told plaintiff's salesman that he liked the Johnston farm. During the next few weeks plaintiff contacted Kenworthy several times in regard to the property, but no agreement of sale was reached.

On October 8th, 1956, defendants informed plaintiff in writing that they were taking their farm off the market. Other real estate brokers who had been given listings were similarly informed. Plaintiff, however, continued to negotiate with Kenworthy after receipt of the letter, at least through the remainder of October since Kenworthy seemed to have a sincere interest in purchasing the farm.

In the early part of November, 1956, Paterno called upon defendant, J. B. Johnston, at his residence and was given an oral listing to sell the farm at a price of $150,-000. Paterno thereafter in turn advertised the property for sale. As a result in the latter part of November he received an inquiry by telephone from Kenworthy. Paterno then made arrangements to meet Kenworthy and show him the farm. After showing the farm Paterno discussed the terms of his listing and on November 30th, 1956, a "purchase contract and receipt" agreement was drawn up whereby Kenworthy offered to purchase for $150,000. This agreement which also provided for the payment of a commission by defendants of $7,500 to Paterno was thereafter accepted by defendants.

Three days after the purchase contract had been signed by defendants, plaintiff called upon J. B. Johnston and asked if he could start working on the sale of the farm again. At this time Johnston told plaintiff the farm had been sold to Kenworthy. Plaintiff informed Johnston that Kenworthy had been his prospect and thereafter instituted this action.

Plaintiff's claim for relief was based on the written listing of August 24th, 1956, particularly that portion in which defendant J. B. Johnston agreed to pay him 5% of the selling price, " * * * *if sold within one (1) year after the expiration of this listing to anyone with whom you* [Galbraith] *had negotiation prior to expiration.*" The trial judge, prior to the introduction of any evidence ruled that plaintiff in order to recover must prove that he was the procuring cause of the sale. Although plaintiff voiced his objection to this ruling initially and at various stages of the trial, the court adhered thereto being of the opinion that a broker before being entitled to a commission had to show he was the efficient, procuring cause of the sale. The question as to whether Galbraith or Paterno was the procuring cause was submitted by special interrogatories to the jury and answered in favor of Paterno. The dispositive issue on this appeal relates to the propriety of the trial court's ruling that only the broker who

is the procuring cause is entitled to a commission.

Provisions in exclusive listings whereby the owner of real property agrees to pay a commission to the broker if the property is sold to one whom the broker has had negotiations prior to the expiration of the listing have been enforced irrespective of the fact that the broker is not the effective, efficient and procuring cause of the sale. Shorten v. Mueller, 206 Okl. 62, 241 P.2d 187; Mills v. Hunter, 103 Cal.App.2d 352, 229 P.2d 456; Munson v. Furrer, 261 Wis. 634, 53 N.W.2d 697; Brawley v. Brockhardt, 70 Ohio App. 14, 44 N.E.2d 492. The purpose of such a provision is to protect the broker where he has negotiated with a prospect but the sale has not been consummated until after the listing has expired. Shorten v. Mueller, supra. Although a provision, as in the instant case, is usually found in an exclusive listing, unless there is a valid reason why a prospective seller of real property may not agree to be bound to the same conditions in a nonexclusive listing, the trial court must be held to have erred.

■ It is true that generally a real estate broker who along with other brokers is given a listing for the sale of real property on a nonexclusive basis must in order to be entitled to a commission from the seller of property prove that he was the procuring cause of the sale. Porter v.

Ploughe, 77 Ariz. 33, 266 P.2d 749; Clark v. Ellsworth, 66 Ariz. 119, 184 P.2d 821; Fink v. Williamson, 62 Ariz. 379, 158 P.2d 159; Garver v. Thoman, 15 Ariz. 38, 135 P. 724. But patently a prospective seller may obligate himself by contract to the possibility of payment of an additional commission. As the Louisiana Court of Appeal said in speaking of a similar clause and in quoting with approval the trial judge's reasoning:

"'* * * The parties were capable of consenting, did consent and the object of the contract being lawful, it is a perfectly good private law between the parties, and, however unwise, or, however foolish a man may be to enter into such a contract, the courts do not sit to relieve men of the results of their folly, but sit to enforce private as well as public laws.'" Englemann v. Auderer, 10 La.App. 136, 121 So. 194, 195.

■ This Court has repeatedly ruled that parties have a legal right to make such contracts as they desire provided only that it is not for an illegal purpose or against public policy. A party can not complain of the harshness of the terms nor expect a court to relieve him of the consequences. Commercial Standard Insurance Co. v. Cleveland, 86 Ariz. 288, 345 P.2d 210; S. H. Kress & Co. v. Evans, 21 Ariz. 442, 189 P. 625.

While fully recognizing the foregoing, defendants assert that the failure to fill in blanks on the printed form along with the deletion of specific words and the addition of others shows an intent that plaintiff could earn a commission only by being the procuring cause of the sale. Significantly, however, no deletion was made of the clause "or if sold within one (1) year after the expiration of this listing to anyone with whom you had negotiation prior to expiration." This clause, although it could have been eliminated had the parties so intended, remained as an integral part of the contract. It is clear, concise and unambiguous and no rule of construction now permits a court to superimpose a contrary subjective intent. A contract which is clear and unambiguous must be interpreted according to its terms. City of Phoenix v. Tanner, 63 Ariz. 278, 161 P.2d 923; Maxey v. Somerton State Bank, 22 Ariz. 371, 197 P. 894.

The fact that there was here intended a nonexclusive listing does not of itself raise an ambiguity. An exclusive listing gives the broker an exclusive right to sell the property for a specified period and an additional right that, if a sale is made by another during that period, the seller becomes obligated for a commission to the broker with whom the listing is given. It is not that the broker has by procuring the sale earned a commission but that the parties contracted for payment of a commission irrespective of whether he was the procuring cause. Under the terms of the contract in this case Galbraith earned a commission if the sale was made to a person with whom he negotiated prior to the expiration of the listing. While the contract may not be the customary one for a nonexclusive listing, no inconsistency leading to an ambiguity exists and hence it must be construed according to its plain terms.

Defendants in their amended answer raised certain affirmative defenses which were not litigated because of the trial court's initial ruling. No opinion is now expressed as to such defenses. We simply remand this cause for proceedings consistent with the views herein expressed. The judgment in favor of J. B. Johnston and Virgie Mae Johnston against L. B. Galbraith is ordered reversed.

Judgment reversed.

BERNSTEIN, C. J., UDALL, V. C. J., JENNINGS, J., and ROBERT E. McGHEE, Judge of Superior Court, concurring.

NOTE: The Honorable LORNA E. LOCKWOOD being disqualified, the Honorable ROBERT E. McGHEE, Judge of Superior Court of Gila County, Arizona, was called to sit in her stead.