435 P.2d 732

Fred L. LYON and Isabel Lyon, his wife, Appellants,

v.

BIG BEND DEVELOPMENT CO., a Limited Partnership, Appellee.

No. 1 CA–CIV 479.

Court of Appeals of Arizona.

Jan. 2, 1968.

Rehearing Denied Jan. 29, 1968.

Review Denied March 5, 1968.

Rawlins, Ellis, Burrus & Kiewit, by Chester J. Peterson and Glen Randall, Phoenix, for appellants.

James J. Dwight and Reginald R. Kiefer, Jr., Scottsdale, for appellee.

DONOFRIO, Judge.

This is an action initiated by the Director of Insurance as receiver of the Union Title Company for instructions con-

cerning his obligations under Trust No. 595 of the Union Title Company, successor to the Lane Title and Trust Company. The contest, however, is between the "First Beneficiary", Fred L. Lyon and Isabel Lyon, and the "Second Beneficiary", Big Bend Development Co., a Limited Partnership, who intervened for the purpose of having the Court determine their individual rights under the trust.

The facts pertinent to this appeal may be briefly stated as follows: On September 8, 1959 the Higgins and the Lyons, two couples, purchased certain properties in Mohave County from the Hulets, described in Trust No. 504. The property consisted of four parcels described on pages 1 and 1(a) of the trust, and in addition there was an option to purchase certain property described on page 3(a) as Parcels 5 and 6.

On October 5, 1959, before Trust 595, by separate agreement the Hulets granted an option to purchase to the Higgins Parcels 5 and 6. Said option was recorded in the office of the Mohave County Recorder on November 6, 1959.

On February 2, 1960 Higgins and Lyons sold the property remaining in the trust to the Fosters, a couple, who entered into the trust agreement No. 595 involved herein wherein the Fosters were designated as Second Beneficiaries (buyers) and the Higgins and Lyons were designated as First Beneficiaries (sellers), and the title company as trustee. The property described in Trust 595 is the same property described in Trust 504, with the exception of a parcel which had been released out of the trust. On page 3(a) of said trust appears the provision which gives rise to this controversy concerning the option property which is identical in wording to the provision in Trust 504 describing the same property, Parcels 5 and 6. The provision reads:

"In consideration of the above the First Beneficiary agrees to sell, and the Second Beneficiaries agree to buy, in accordance with the terms and conditions of an Option Agreement executed by them, de-

posited herewith and to be made a part of this Trust, that real property described as follows:" (legal description of Parcels 5 and 6 follows)

The trust was drawn by an employee of the title company, then Lane Title and Trust Company. The Fosters transferred all of their interest in Trust 595 to appellee Big Bend Development Co., a Limited Partnership.

On or about the 9th day of March, 1961 the balance due First Beneficiaries, Lyon and Higgins, under Trust 595 was $42,750. Higgins, on that date, sold all his interest in said property to the Lyons for $11,000, his interest being an undivided one-half interest in the said balance.

About June 1962 Big Bend Development Co. undertook to exercise the option to purchase the option property and made payments through the title company under Trust 504. The title company had released part of the option property to Big Bend Development Co. or its nominees upon the payment of the release prices due the First Beneficiaries under Trust 504. In April 1965 Lyon through his attorney gave notice that no option existed between the First and Second Beneficiaries in Trust 595, and on September 27, 1965 delivered a letter to Union Title Company stating that Union Title was not to release any lands under Parcels 5 and 6 without payment to him of $275.00 per acre.

As a consequence of these developments, the trustee stopped releasing property and brought this petition for instructions wherein the Lyons and Big Bend intervened, asserting their respective claims. Big Bend's position is that it was the intent of Trust 595 to transfer the option in Trust 504 to the buyers whose interest they now own. Appellants' position is that the option in Trust 504 was not meant to be transferred, or if it was meant to be transferred, it was for an additional $275.00 per acre.

The trial court ruled that ambiguities existed in the trust and permitted the introduction of parol evidence, and on the

submission of the case, entered a judgment that the parcels encompassed in the option to purchase were to be held by the trustee for the benefit of appellee to be administered according to the terms of Trusts 504 and 595 without payment of further consideration. Appellants bring this appeal.

The first question to be considered which may be determinative of this appeal is whether the trial court was in error in holding that there was an ambiguity in Trust 595 and in receiving parol evidence thereon. If this be answered in the affirmative, the remainder of the questions raised need not be considered.

We believe it necessary to set forth in full the pertinent provisions wherein the ambiguity is urged by the appellee to exist. These provisions are:

"In consideration of the above the First Beneficiary agrees to sell, and the Second Beneficiaries agree to buy, in accordance with the terms and conditions of an Option Agreement executed by them, deposited herewith and to be made a part of this Trust, that real property described as follows: (the description of the property, Parcels 5 and 6, follows and is not in dispute)

\*     \*     \*     \*     \*     \*

"In the event the First Beneficiaries, after the exercise of their option, are unable to obtain titles to Parcels Nos. 5 and 6 above in accordance with the terms of that certain Option dated October 5, 1959, between Hulet Lyon and Paul Higgins, the First Beneficiaries hereby gives the Second Beneficiaries the right and authority to institute or carry on any suit or litigation in the name of the First Beneficiaries for the perfecting of said title, and all costs and expenses in connection with such a suit including all attorneys fees, shall be borne by the First Beneficiaries.

\*     \*     \*     \*     \*     \*

"The first 54 acres to be released is released in consideration of the down payment, as has been set forth on page 3(b) hereof; the next 120 acres released shall require a release price payment of $275.00 per gross acre, plus interest on the release price only; and all other acreage released after the release of the first 170 acres shall be at a release price of $275.00 per gross acre, plus interest on the release price. *It is fully understood by the Beneficiaries that the aforementioned release price payments are in addition to those required under Trust No. 504.*" (page 6(a))

We find no ambiguity in the foregoing provisions of the trust agreement. The first paragraph seems clearly to indicate that the "First Beneficiary" intended to sell and the "Second Beneficiaries" intended to buy the trust property "in accordance with the terms and conditions of an Option Agreement executed by them, deposited herewith and to be made a part of this Trust,".

We believe the language clearly expresses the intention of the parties concerning their agreement to sell and buy the option property. The words are not susceptible of more than one meaning. They state that First Beneficiary would sell to Second Beneficiaries certain property according to the terms of an option agreement which had been executed by the parties and would be deposited with and made a part of the trust agreement. We cannot say that because the option agreement was not actually made and deposited as agreed that this alone created an ambiguity in these provisions. Nor that the use of the past tense "executed" and "deposited", followed by the words "to be made a part of this Trust", created ambiguity. Having knowlingly used the past tense, the parties presupposed they would execute an option agreement around the same time, and having failed to do so, that provision would fail. No ambiguity in the words exists. They are plain as to what the parties intended and the parties failed to carry out their intention. Ambiguities exist where the writing is susceptible of more than one meaning. 7–G Ranching Com-

pany v. Stites, 4 Ariz.App. 288, 419 P.2d 358 (1966). The fact that the option agreement was not prepared and executed would not change the intention expressed, nor should such a fact be allowed to change the ordinary definition of the words used so as to create an ambiguity. When agreements are clear and unambiguous they must be enforced in accordance with their terms. Valley Nat. Bank v. Shumway, 63 Ariz. 490, 163 P.2d 676 (1945). The parties never having entered into the option agreement, the provision would fail. The parties would be entitled to enforce the provision they agreed upon according to the laws covering such a situation. They may not, however, under the guise that the contract is ambiguous, resort to the use of parol evidence to construct the terms of an option agreement relating to real property which agreement is required by the Statute of Frauds to be in writing. A.R.S. § 44–101(6).

■ The second paragraph clearly indicates that the parties intended "First Beneficiaries" to "exercise * * * their option" which option is described as "that certain Option dated October 5, 1959, between Hulet Lyon and Paul Higgins,". We believe this language is clear in expressing that the parties intended the "First Beneficiaries" to retain their rights under the option dated October 5, 1959, and to exercise the same; that in the event "First Beneficiaries" were unable to clear title thereafter, then "Second Beneficiaries" would have the right and authority to carry on certain litigation for the purpose of obtaining a clear title. Said litigation was to be carried on in the name of "First Beneficiaries" and at "First Beneficiaries'" expense. No other interpretation can be given to the language used and therefore no ambiguity has been created. The option agreement of October 5 was a specific agreement between the Hulets and the Higgins executed before Trust 595. This paragraph, which appears to be written by a different typewriter, although following the agreement for option, cannot be confused with it as it is explicit in its wording and specifically relates to the agreement dated October 5. We see no reason for inserting this provision if the parties had intended to transfer the option rights obtained by the First Beneficiaries under the option dated October 5. Why would the parties provide that the First Beneficiaries were to exercise their option if the First Beneficiaries had already disposed of that option, and why would they agree to pay costs, expenses and attorneys' fees arising from the exercise of said option if they had transferred said option to Second Beneficiaries? Here again the contract is couched in plain and ordinary language susceptible of only one meaning. No latent ambiguity appearing, it is the province of the Court only to interpret the meaning of the contract and to not permit parol evidence which might vary its terms. Valentine v. Shepherd, 19 Ariz. 241, 168 P. 643 (1917).

■ We now come to the third paragraph quoted. Here again the language is rather explicit and concludes with the following definite statement:

"It is fully understood by the beneficiaries that the aforementioned release price payments are in addition to those required under Trust No. *504*."

Here again the intent of the parties is clearly and unequivocally stated. We find this part of the trust agreement underlined. Although we are unable to find any evidence to explain it, we can only infer that the parties understood these words and intended to emphasize them. It would appear that the trial court allowed parol evidence which contradicted this provision and apparently on the basis of such parol evidence concluded that an ambiguity existed. Extrinsic evidence is admitted to resolve ambiguities, not create them. McNeil v. Attaway, 87 Ariz. 103, 348 P.2d 301 (1959).

We have examined all four corners of the trust with particular emphasis on the option agreements and are unable to find any ambiguity calling for parol evidence. We find the document itself affords a reasonably clear understanding of what the parties agreed to do and can be given a definite le-

gal meaning or interpretation and that it should be enforced in accordance with that interpretation. Richards Development Company v. Sligh, 89 Ariz. 100, 358 P.2d 329 (1961).

The option agreement called for in Trust 595 not having been entered into, appellants should be returned their option rights under the option of October 5, 1959.

Reversed.

CAMERON, C. J., and STEVENS, J., concur.