## No. 24283.

ELMER H. BECKER, LUCILLE BECKER, LIONEL K. DANIELSON, MARY K. DANIELSON, MEARL D. SHELLENBARGER, JEAN A. SHELLENBARGER, ROBERT L. HAIGH, GERALDINE F. HAIGH, HAROLD E. WHITE, DELLA WHITE, OTTO ACKERMAN, PATRICIA C. ACKERMAN, FRED ROY CARPENTER, MARY JANE CARPENTER, HARRY HAMMERS, ELVIL HAMMERS, ROBERT L. ANDERSON, JEANNETTE M. ANDERSON, DANIEL F. FREDDY, AND JOYE D. FREDDY *v.* NORMAN W. ARNFELD AND ELLEN M. ARNFELD.

(466 P.2d 479)

Decided March 16, 1970.

Robert Ausenhus, for plaintiffs in error.

No appearance for defendants in error.

*En Banc.*

Mr. Justice Pringle delivered the opinion of the Court.

This appeal involves the construction of certain covenants restricting the use of real property. The plaintiffs in error (plaintiffs in the trial court) are all property owners and residents in Cottonwood Terrace Subdivision which is a residential subdivision located near Loveland. All of the lots in the subdivision were sold subject to certain restrictive covenants which were recorded on the plat by the subdivider. The plaintiffs brought suit in the district court against the defendants, also property owners and residents in Cottonwood Terrace Subdivision, to enjoin an alleged violation of the restrictive covenants.

Paragraph B-5 of the agreement as to protective covenants provides:

"LIVESTOCK AND POULTRY — No animals, livestock or poultry of any kind shall be raised or kept on any lot, except dogs, cats or other household pets provided that they are not kept or maintained for any commercial purpose. Horses may be maintained for non-commercial purpose and provided further that the total number of horses upon any lot shall never exceed 4 at any time, and that the owner of said lot shall always maintain the same in a neat and sanitary condition."

The plaintiffs alleged that the defendants were keeping a quantity of ducks, geese and turkeys on their property in violation of this covenant and sought an injunction against the maintenance of any such fowl on property in Cottonwood Terrace Subdivision. At the trial on the

merits, the defendants did not contest the application of the restrictions in the covenants to their property. They admitted keeping 12 ducks, 5 geese and 4 turkeys in a pen in their yard. The trial judge found that the defendants treated their birds as they treated their dog and cat and that they were, therefore, household pets within the meaning of the exception in the covenants, and he denied the injunction.

The plaintiffs allege (1) that the trial judge did not properly construe the meaning of the restrictive covenants; and (2) that the determination by the judge that the fowl were household pets is not supported by the evidence in the record. We agree that the trial court improperly construed the restrictive covenants, and we, therefore, reverse.

Neither the total number of pets permitted nor the kinds of pets to be included under the term "other household pets" is specified by the restrictive covenant in question. Where, as here, the express language of a restrictive covenant upon land is ambiguous and uncertain in its application to the facts, the intention of the parties to the covenants is controlling, and, if possible, that intention is to be ascertained from the entire language of the covenant agreement in connection with the subject matter of the covenants. *Dunn v. Dunn,* 3 Colo. 510.

The preamble to the agreement as to restrictive covenants provides that the purpose for the covenants is to maintain all of Cottonwood Terrace Subdivision as a residential area and to protect not only the appearance, but the sanitation, safety and convenience of the homes within the area. One covenant provides that no noxious or offensive activity shall be carried on upon any lot nor shall anything be done thereon which may become an annoyance or nuisance to the neighborhood. Keeping any animal for commercial purpose is prohibited.

The clear intent expressed in the covenants as a whole is to create a desirable, pleasant residential area.

It is clear that the exception as to pets was intended to limit the ownership of animals upon the property to that normally associated with residential, family living. We do not consider it in character with a planned residential community for a person to maintain a flock of 21 assorted poultry on his property. The subdivider who placed the restrictive covenants in question upon the property testified that it was not his intent that fowl should be kept on the premises. We interpret the covenant as limiting the number of pets, whether dogs, cats, or ducks, to a number in keeping with reasonably quiet residential living and not rural or farm living.

We do not mean to say that a goose, duck or turkey raised as a pet by the children of the household could not be classified as a household pet under the terms of the covenant. What we hold is that where the nature and number of the animals is such that the desirable, residential character of the neighborhood is threatened, then such numbers of animals are prohibited under the covenants.

There was testimony by one of the defendants' neighbors that he and his wife were awakened early in the morning during the summer months by the barnyard noises coming from the defendants' birds. There was evidence that another neighbor found the defendants' fowl had roosted in his trees leaving droppings on the ground on at least two occasions. All of the property owners who testified for the plaintiffs expressed fear over the future of the community if fowl in such numbers should be maintained by the defendants or others in the subdivision.

We conclude that, as a matter of law, the defendants' flock of 21 birds was not in keeping with the contemplated residential quality of the neighborhood, and is not within the exception to the prohibition against poultry contained in the restrictive covenants governing use by the defendants of their land.

The judgment is reversed and the cause remanded.

MR. JUSTICE KELLEY not participating.