522 P.2d 46

Raymond GROSSMAN, Erna Grossman, Bertram Cole, Nancy K. Cole, Kenneth Redmond, Margaret Redmond, Harold F. Vinson, Helen Vinson, et al., Appellants,

v.

Edith E. HATLEY, Blankenship Builders, Inc., an Arizona corporation; Pima County, State of Arizona, Appellees.

No. 2 CA–CIV 1532.

Court of Appeals of Arizona, Division 2.

May 14, 1974.

Rehearing Denied June 7, 1974.
Review Denied July 9, 1974.

582

Laber, Lovallo & Colarich, Ltd. by Joseph A. Lovallo, Tucson, for appellants.

Mariscal, Weeks & Lehman, P. A. by Phillip Weeks and Richard A. Friedlander, Phoenix, for appellee Blankenship Builders, Inc.

Robertson, Molloy, Fickett & Jones by John L. Donahue, Jr., Tucson, for appellee Hatley.

Dennis DeConcini, Pima County Atty. by John R. Neubauer, Chief Civ. Deputy County Atty., Tucson, for appellee Pima County.

HATHAWAY, Chief Judge.

Appellants-plaintiffs, a group of lot owners in a subdivision known as Country Club Estates No. 2, have appealed from a summary judgment rendered against them in superior court. Plaintiffs seek in Count One of their complaint both to enjoin the alleged violation of certain restrictive covenants by defendants Edith E. Hatley (hereinafter Mrs. Hatley), Blankenship Builders, Inc., and Pima County, and to declare void a dedication of certain property to Pima County. In Count Two, they seek to abate an alleged nuisance caused by defendants.

Mrs. Hatley was the owner of a tract of land immediately to the east of Country Club Estates, No. 2. In 1966, Mrs. Hatley acquired title to Lot 2 of Country Club Estates No. 2. Lot 2 lies between and connects Mrs. Hatley's tract on the east, and a street, Camino Principal, on the west. Camino Principal had been dedicated to the County of Pima in 1960 by the common developer of Country Club Estates, Country Club Estates No. 2 and Country Club Estates No. 3. At the time of this lawsuit, Camino Principal served these three separate subdivisions exclusively.

Soon after Mrs. Hatley acquired Lot 2, she entered into a contract with defendant Blankenship Builders, Inc. to subdivide a portion of her tract into forty-four lots. In 1967, apparently in connection with her efforts to persuade the County of Pima to rezone her tract to effectuate the proposed subdivision,[1] Mrs. Hatley dedicated Lot 2 of Country Club Estates No. 2 to the county "for road purposes". This dedication was accepted by the county shortly thereafter.

As to Count One of the complaint, we must decide whether Mrs. Hatley's dedication of Lot 2 was valid when said lot was subject to the following restrictions which

1. Apparently a road through Lot 2 connecting Camino Principal to the proposed subdivision

afforded an adequate additional means of ingress and egress to the Hatley tract.

were recorded against the lots comprising Country Club Estates No. 2 in 1961:

"1. Each and every lot shall be used for private residence purposes only.

\* \* \* \* \* \*

23. Said property shall be subject to any and all rights which the County of Pima . . . may acquire through dedication or by the filing or recording of maps or plats of said property."

Plaintiffs argue that the dedication of a portion of Lot 2 of the subdivision owned by defendant Mrs. Hatley to Pima County "for road purposes" violates the covenant which runs with her property limiting its use to private residential purposes. They assert that even if clause 23 allows dedication, the dedication was invalid without the consent of the other lot owners since, they argue, a restrictive covenant is a vested property interest in the servient estate.

Defendants' position is that clause 23 can only be interpreted as meaning that the restrictions recorded against the subdivision lots do not apply to or limit any dedication by a lot owner to Pima County.

 Restrictive covenants are to be strictly construed against persons seeking to enforce them and any ambiguities or doubts as to their effect should be resolved in favor of the free use and enjoyment of the property and against restrictions. Palermo v. Allen, 91 Ariz. 57, 369 P.2d 906 (1962); R & R Realty Co. v. Weinstein, 4 Ariz.App. 517, 422 P.2d 148 (1966). However, when both the intent of the parties and the purpose of the restrictions are clear, they should be examined to give the instrument a just and fair interpretation. Sky Mountain Ranch Subdiv. Prop. O. Ass'n v. Williams, 12 Ariz.App. 244, 469 P.2d 478 (1970); R & R Realty Co. v. Weinstein, supra.

The introductory statement to the "Declaration of Establishment of Conditions and Restrictions" for the Country Club Estates No. 2 subdivision provides that the words "said property" shall refer to the lots comprising the subdivision. Therefore clause 23 can be read as follows:

"[The lots of the subdivision] . . . shall be subject to any and all rights which the County of Pima . . . may acquire through dedication or by the filing or recording of maps or plats of . . . [said lots]."

Obviously, the phrase "by the filing or recording of maps or plats" refers to dedication which can come about by the recording of a map or plat both at common law and by statute, in this jurisdiction. See City of Scottsdale v. Mocho, 8 Ariz. App. 146, 444 P.2d 437 (1968); City of Flagstaff v. Babbitt, 8 Ariz.App. 123, 443 P.2d 938 (1968); A.R.S. §§ 9–474, 9–477, 9–254. Therefore, clause 23 refers broadly to any type of dedication of the lots composing the Country Club Estates No. 2 subdivision.

The fact that the clause provides that all *lots* are held subject to any rights which the County of Pima may acquire through dedication of any *lot* negates any argument by plaintiffs that the clause was intended to allow only the developer of the subdivision to dedicate only *streets* and *other easements* and not lots to the county. Moreover, the customary dedications of streets and other easements by the developer had already been made when the restrictions were filed. The language simply does not support the contention that clause 23 does not apply to the dedication of a lot.

Neither can there be any argument that clause 23 was intended to apply solely to the dedication of lots retained by the developer since the developer, who prepared and recorded the restrictions, did not specifically limit the dedication provided for in clause 23 to himself. In so holding, we again mention our obligation to construe restrictive covenants strictly in favor of the free use of land.

Defendants attached to their motion for summary judgment the following supplemental restriction which was filed by the same developer as to Country Club Estates, a separate subdivision, more than three

years before the restrictions were filed as to Country Club Estates No. 2:

> "No lot located in COUNTRY CLUB ESTATES on the outside boundaries thereof, shall be used for road purposes for ingress and egress to any other land lying outside of said Subdivision and any road or right-of-way thereon shall be used only for ingress and egress to the residences and outbuildings located thereon, unless consent in writing is obtained from the undersigned."

We find it highly significant that the above-quoted restriction was omitted from those filed as to Country Club Estates No. 2 despite the fact that the latter set of restrictions are almost identical to those pertaining to Country Club Estates. The omission of this restriction can lead to no other conclusion than that of an intention to leave the lots comprising Country Club Estates No. 2 free for development as streets.

To accept plaintiffs' interpretation of clause 23 would render that clause meaningless. If the clause is not read to create an exception to the restrictions in cases of dedication by a lot owner, a lot could never be dedicated since (1) the restrictions require that each lot be used for residential purposes and (2) any dedication to the public limited to private residential use would be invalid because a dedication must be for public use. City of Scottsdale v. Mocho, supra.

Plaintiffs argue that dedication of a lot would only be allowed with the consent of all the remaining lot owners under clause 23. However, we fail to see what significance the clause, dealing specifically with the dedication of a lot, would have if it required the consent of all the lot owners before one could dedicate his lot. A lot owner could use his lot for any purpose conforming to zoning requirements so long as he had the consent of the other lot owners.

Plaintiffs contend it would be ridiculous to interpret clause 23 as allowing a lot owner to "unilaterally change the character and use of his property by dedication" and "render all the previous restrictions null and void." First, we cannot escape the fact that the plain language of clause 23 clearly allows for such a dedication. Included in the rights attaching to the ownership of his lot, each plaintiff has the right to have Lot 2, owned by Mrs. Hatley, used exclusively for residential purposes. However, clause 23 specifically provides that this right is *subject to* any right Pima County may acquire through dedication of another lot. There can be no doubt that the plain language of clause 23 renders the restrictions inapplicable in cases of dedication.

Second, clause 23 only renders the restrictions inapplicable to cases of dedication to the public. They continue to apply with full force to private landowners. Finally, it is not beyond the scope of reality to reason that the developer intended that the restrictions be inapplicable in cases of dedication of a lot. As noted above, dedication involves an acceptance by the public of the lot for a public purpose. One or more lots could be dedicated for purposes which would directly benefit the public which includes neighboring lot owners. With the advent of sophisticated planning, it is reasonable to expect that the county would not accept a dedication for purposes which would harm or seriously disturb the residential character of the neighborhood. The developer may well have intended to waive the restrictions in cases of dedication feeling that a dedication could improve the subdivision.[2] Another theory is that the developer, since he had also been developing the area around Country Club Estates No. 2 (specifically Country Club Estates and Country Club Estates No. 3), ·may have seen a possibility of acquiring the adjacent Hatley tract for yet a fourth

---

2. Possible advantages to the lot owners which might come about through dedication of a lot could encompass public swimming pools, parks, playgrounds, tennis courts, increased fire and police protection, libraries, etc.

subdivision. In that case he may well have wished to retain a lot in Country Club Estates No. 2 which was not subject to restrictions if dedicated to the county for road purposes as a prerequisite to the rezoning of the Hatley property which he would be seeking to develop. In sum, we canot say that it is ridiculous to assume that the developer intended clause 23 to mean exactly what it says.

Even if clause 23 is totally inconsistent with the actual intent of the developer, we cannot rewrite it to reimpose the restrictions in cases of dedication. Clear and unambiguous agreements must be enforced in accordance with their terms. Brady v. Black Mountain Inv. Co., 105 Ariz. 87, 459 P.2d 712 (1969); Goodman v. Newzona Inv. Co., 101 Ariz. 470, 421 P.2d 318 (1966); Galbraith v. Johnston, 92 Ariz. 77, 373 P.2d 587 (1962); Lyon v. Big Bend Development Co., 7 Ariz.App. 1, 435 P.2d 732 (1968). Certainly Mrs. Hatley, who had nothing to do with drafting or recording clause 23, has a right to rely upon it in her plans to subdivide her tract. The language providing that the lots comprising the subdivision are held "subject to" any rights acquired by the County of Pima through dedication of other lots in the subdivision can only mean that the restrictions are inapplicable in cases of dedication to the public.

■ Whether a contract is ambiguous or uncertain is a question of law and the mere fact that the parties disagree as to the meaning of its terms does not, in and of itself, establish its ambiguity. University Realty & Development Co. v. Omid-Gaf, Inc., 19 Ariz.App. 488, 508 P.2d 747 (1973). Since we do not find any ambiguity as to the meaning of clause 23 or any inconsistency between it and the remaining restrictions, we must affirm the summary judgment as to Count One.

■ Plaintiffs next contend that the trial court erred in granting defendants' motion for summary judgment as to Count Two of their complaint which alleges that defendants have created a nuisance. Their theory is that the increased traffic caused by the use of Mrs. Hatley's property as a public street amounts to a nuisance. While defendants allege in Paragraph II of Count Two that defendants, by their conduct, *have caused* increased traffic, vehicle congestion, noxious odors and noises, destruction of native growth and diminution of natural beauty, they allege in Paragraph VI of Count One (incorporated into Count Two) that defendants have entered into an agreement which *will allow* Mrs. Hatley's property to be used as a roadway. The complaint is therefore contradictory as to whether there actually is a street which has been constructed, the public use of which is causing a nuisance. Conduct ordinarily will not be enjoined on the grounds of anticipating a nuisance therefrom where it is not necessarily a nuisance but may become one in the future. Kubby v. Hammond, 68 Ariz. 17, 26, 198 P.2d 134 (1948). Moreover, plaintiffs have not submitted anything in connection with the motions for summary judgment which tends to support their allegations that a nuisance has been created. On the other hand, defendants presented an affidavit indicating that the street has been accepted by the County of Pima upon the recommendation of the County Engineer.

We find no error in the trial court's grant of summary judgment to defendants.

Affirmed.

KRUCKER, J., concurs.

HOWARD, Judge (dissenting).

I am unable to agree with the majority opinion. The rule cited by the majority in Palermo v. Allen, supra, and R & R Realty Co. v. Weinstein, supra, is subject to a proviso:

"This rule of strict construction, however, obtains only where the parties have failed to express their meaning with sufficient clarity to enable the court to say that the construction of the deed is plain and admits of no doubt; the rule will not be applied to defeat the obvious purpose of the restriction, or the obvious

**586**

intention of the parties, even though not precisely expressed, nor does it require an unnatural and strained construction of the words used; and before giving effect to the rule the court will have recourse to every aid, rule, or canon of construction to ascertain the intention of the parties, since it is the duty of courts to enforce, not to make, contracts." 26 C.J.S. Deeds § 163.

There are other rules of construction which are also applicable to this case. The intention of the parties must be gathered from the *entire* context, rather than from isolated words. Barber v. Winter, 208 Ga. 712, 69 S.E.2d 249 (1952); Becker v. Arnfeld, 171 Colo. 256, 466 P.2d 479 (1970).

Restrictions which are ambiguous when applied to the facts may be interpreted in the light of a general plan. Nance v. Woldrop, 258 S.C. 69, 187 S.E.2d 226 (1972).

The covenant in question reads:

"Said property shall be subject to any and all rights which the County of Pima and/or the City of Tucson may acquire through dedication or by the filing or recording of maps and plats of said property."

Dissecting the paragraph at issue and construing it with the entire five pages of comprehensive restrictions, it is clear that the intent is to give the *grantor* the right to dedicate the property and *not* the grantee. First, dedication by means of filing maps and plats can only be accomplished by the owner of a subdivision and not by an individual lot owner. A.R.S. § 9–474(A) and A.R.S. § 9–474(C). The conjunction of the word "dedication" with a phrase applicable only to the owner of land which is to be subdivided convinces me that paragraph 23 is inapplicable to the grantees of the individual lots. This is especially so when one considers the entire document. Tucson Country Club Estates is an exclusive subdivision in Pima County. The restrictions are numerous and they are obviously meant to maintain an exclusive area of single family residences. The con-

struction adopted by the majority defeats the obvious purpose of the restrictions and creates an absurdity. If the majority opinion is correct, a grantee can dedicate his land to the city or county for use as a zoo or multi-story governmental building. Such an intent is clearly not to be gleaned from the entire set of restrictions.

The majority claims that since maps and plats had already been filed, paragraph 23 would be rendered meaningless if it is not given the construction they advocate. That is just the point. There is a latent ambiguity permitting the introduction of parole evidence as to the intention of the grantor. Summary judgment is at this time premature.

I would reverse and remand for further proceedings.