No. 15,690.

GEORGE *v.* SHEPARD.
(184 P. [2d] 473)

Decided August 25, 1947.

Mr. THOMAS K. HUDSON, for plaintiff in error.

Mr. BYRON G. ROGERS, Mr. FRANK A. BRUNO, for defendant in error.

In Department, before: MR. CHIEF JUSTICE BURKE, MR. JUSTICE STONE and MR. JUSTICE HAYS.

PER CURIAM.

WE will refer to the parties to this action as they appeared in the trial court. Plaintiff Shepard brought the action against defendant George for recovery on: (1) A promissory note in the amount of $525.00, dated July 15, 1938, drawing interest at five per cent per annum, less a credit thereon of $100.00; (2) a promissory note in the amount of $500.00, dated June 2, 1939, with interest at seven per cent per annum and attorney's fees; (3) a promissory note in the amount of $400.00, dated June 12, 1940, with interest at seven per cent per annum, and attorney's fees; and (4) a stated account of $5,000.00 with interest from February 12, 1943.

Defendant answered, admitting the execution of the three notes; admitting they have not been paid, excepting for the $100.00 credit; admitting the execution of the agreement of February 12, 1943; but denying liability, alleging:

(1) That a partnership existed between the parties hereto, which gave rise to the items upon which suit was brought and that if an accounting were had between the partners as to all financial transactions, plaintiff would have been shown to have received more than the amounts due on the notes and be indebted to defendant; (2) that as to the fourth cause of action, the alleged promise of February 12, 1943, to pay $5,000.00 was without consideration and was obtained through extortion and blackmail by the plaintiff, hence was void.

Trial was to the court without a jury, and the court found that an accounting, which defendant asked, was wholly unnecessary, and that the evidence failed to establish blackmail, extortion, duress or threats. Judgment was entered for plaintiff on all four causes of action of the complaint.

The evidence unfolds a story replete with the misunderstandings, complications, accusations and recriminations which invariably are born of the type of relationship existing between the parties. Plaintiff, a mature woman, possessed of moderate means, and intent

on increasing them through trading in stocks, bonds, and commodities, was referred to defendant, a married man of approximately the same age, whose experience in business was deemed sufficient to qualify him as her "business manager and adviser." Business relationship between the parties begun in 1933 quickly developed into an intimate personal affair, which, because of defendant's then marital status, was necessarily carried on in the shadows of secrecy. Inevitably their affairs, business and personal, became intertwined and confused to such an extent that it is virtually impossible from the evidence presented, giving credence to both parties, to find the line of demarcation between the affairs affecting the purse and those of the heart.

Both parties admit partnership dealings in some of their transactions, interspersed with personal advances one to the other, though mostly from plaintiff to defendant, for financial needs not concerned with the partnership. These dealings covered a period of several years, ending with the alleged agreement of February 12, 1943, for the payment by defendant to plaintiff of $5,000.00, as set out in the fourth cause of action. Apparently the usefulness of defendant as an adviser, but not as a companion, ended on July 9, 1938, with an attempted settlement of accounts; however, a few days thereafter defendant solicited a personal loan from plaintiff, giving his note therefor, the first of the series of three upon which this suit was brought, followed by the two others at yearly intervals.

It was during this period of years that defendant alleges he was harassed and coerced by the frequent threats of plaintiff "to go to his wife" or to his relatives in Kansas. After the death of defendant's wife in 1942, fuel was added to the fire by his remarriage to another than the plaintiff, and it is claimed that the temper and the threats of plaintiff grew more furious. The imputation was always that plaintiff would publish to the world the history of their illicit relations.

The conduct of defendant, however, was not consistent with the expressions of fear enunciated by him from the witness stand. Time and again, presented with the opportunity to extricate himself from his web, defendant only wove it tighter. The distasteful relationship could well have been ended by a settlement on July 9, 1938. Yet defendant, six days thereafter importuned plaintiff for a personal advance of $525.00; less than a year later, with the note still unpaid, he asked and was granted another $500.00 loan; and in another year, a third loan of $400.00. This period was included in the span of years during which defendant complains he was being "coerced and blackmailed."

Defendant does not appear to have been in the state of mind that would have compelled him, against his will, to have entered into the final settlement of February 12, 1943, evidenced by the letter which he signed only after it was changed "five or six times" at plaintiff's insistence. That there were threats, quarrels, and undue influence directed against defendant, is not to be doubted, but that such were the motivating and compelling factors which led to the claims at issue does not appear from the evidence.

■ The court below found that the evidence did not sustain the contention of defendant that he was prompted to the agreement of February 12, 1943, by threats, extortion, blackmail and coercion. Such finding is amply supported by the record and the judgment, therefore, must be sustained. *Bohe v. Scott,* 83 Colo. 374, 265 P. (2d) 694; *State v. Webb,* 104 Colo. 446, 92 P. (2d) 328.

■■ The evidence further indicates that the parties freely and voluntarily entered into the agreement of February 12, 1943, with the express purpose of arriving at a stated account and of liquidating their partnership obligations, one to the other. After the consideration of many disputed items, plaintiff and defendant agreed upon a final settlement by which it was ascertained that defendant was indebted to plaintiff in the sum of

$5,000.00 over and above the three promissory notes upon which this suit was brought.

A letter comprising the settlement, addressed to counsel for defendant, is in the following language:

"Denver, Colorado,
February 12, 1943.

"Mr. Thomas K. Hudson,
735 Majestic Bldg.,
Denver, Colorado.
Dear Mr. Hudson:

"This will confirm to you the conversation between Mrs. H. P. Shepard, of Denver, Colorado, and myself today, during which conference we have agreed upon a basis of settlement of the claims which Mrs. Shepard holds against me. We have agreed that she should be compensated for any losses due to having followed my advice in any matters. I estimate this amount to be approximately $4,000.00 and to this I am adding the sum of $1,000.00 to cover any expense that she may have incurred. This sum is in addition to the three notes she holds amounting to $1,400 plus interest. I have told Mrs. Shepard that I do not have the ready cash to make this payment at the present time and I am to furnish life insurance in the amount of $7,500.00 which she is the beneficiary, as security for the above amount until such time as the cash is delivered to her.

"I hereby authorize you to make this payment to Mrs. Shepard from any funds that you may handle for me and from any source whether it be from commissions on sales, sale of my personal property, settlement of any balance due me on any estate, or funds from any other source whatsoever. I have told Mrs. Shepard of some funds due me from a mining transaction and I hereby authorize that this payment to her be made before any other debts are paid or before any money is paid to me or to my estate. Furthermore, in the event of my death, should it be proven to your satisfaction that there may

140

have been any additional losses to Mrs. Shepard, due to her association with me, you are hereby authorized to pay same as outlined above. In the event of any doubt on the proof of such additional claim, she is to be given the benefit of the doubt.

"Kindly handle this matter for me as outlined above so that she is fully protected.

Yours truly,

H. V. George."

It is contended that this was in effect a conditional promise to pay, and that payment was to be made "when funds of the defendant came into the hands of his attorney"; and that contingency not yet having come to pass, the obligation is not enforceable. This position of defendant does not appear tenable when considered in the light of the entire record. Here was an attempt by the parties to come to an understanding which would fully and finally settle their protracted controversies. "We have agreed," the letter recites, "upon a basis of settlement of the claims which Mrs. Shepard holds against me. We have agreed that she should be compensated for any losses due to having followed my advice in any matters." Then follows the computation of such losses. Such is in effect a stated account certain between the two partners. Thus is disposed of the contention that an accounting of partnership affairs should now be had.

"The general rule that an account stated is binding in the absence of fraud or mistake is applicable to accounts stated between partners, so that after partners have mutually stated and adjusted an account it will not be reopened except for fraud, mistake or duress." 40 Am. Jur., p. 376, §352. Likewise it is the rule that: "A settlement between all partners presumptively includes all disputed matters." 47 C.J., p. 1191, §888.

There is in the instant record nothing to rebut such a presumption. Conversely, the language of the letter adds force to it.

In conformity with the general rule, it was held in *Gibson v. Glover*, 3 Colo. App. 506, 508, 34 Pac. 687, that a partnership may be legally dissolved and closed and an accounting concluded by the united act of the partners.

That such an agreement, entered into by erstwhile partners under the circumstances here involved, imports good and sufficient consideration, is too obvious to admit of discussion.

Accordingly, the judgment of the court below is affirmed.

In this case acknowledgment is made of the gratuitous and valuable service of the Honorable James M. Noland, district judge, as referee under our rule of June 9, 1947.