**SKI TIME SQUARE CONDOMINIUM ASSOCIATION, INC., a Colorado non-profit corporation, Plaintiff–Appellee,**

v.

**SKI TIME SQUARE ENTERPRISES, Defendant–Appellant.**

No. 04CA0884.

Colorado Court of Appeals, Division A.

July 14, 2005.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2004.

Law Office of Sarah D. Claassen, P.C., Sarah D. Claassen, Steamboat Springs, Colorado, for Plaintiff–Appellee.

Sharp, Steinke & Sherman, LLC, Thomas R. Sharp, Melinda H. Sherman, Steamboat Springs, Colorado; Sherman & Howard, L.L.C., Joseph J. Bronesky, Denver, Colorado, for Defendant–Appellant.

Opinion by: Chief Judge DAVIDSON.

In this action concerning the enforceability of a restrictive covenant, defendant, Ski Time Square Enterprises, appeals from the trial court's judgment in favor of plaintiff, the Ski Time Square Condominium Association, Inc. (the association). We affirm and remand.

Defendant owns developed real property, known as "Ski Time Square," consisting of a condominium complex and commercial establishments located at the base of the Steamboat Springs ski area. The association represents the condominium owners and is organized as a nonprofit corporation. Some of the property owned by defendant is burdened by restrictive covenants for the benefit of the association, arising from a 1974 agreement entered into by the association and defendant's predecessor. One of the covenants requires that no building or structure be placed on the burdened property without the association's consent.

On April 1, 2001, the Secretary of State initiated administrative dissolution proceedings against the association pursuant to Colo. Sess. Laws 2000, ch. 220, § 7–134–201(1)(b) at 985 (now codified with amendments as § 7–134–201(1)(b), C.R.S.2004), for the association's failure to file a corporate report and, subsequently, administratively dissolved the association. Colo. Sess. Laws 1997, ch. 155, § 7–134–202(2) at 726 (now codified with amendments as § 7–134–202(2), C.R.S.2004).

In the spring of 2002, defendant's tenant built a deck on a portion of the burdened parcel without the association's consent.

The association then sought and obtained reinstatement of its corporate status from the Secretary of State. *See* Colo. Sess. Laws 2002, chs. 333, 338, § 7–134–203(1), (3) at 1857, 1722 (repealed effective July 1, 2004). The association subsequently filed this action, seeking to remove the deck.

The parties filed cross-motions for partial summary judgment regarding the dissolution's effect upon the restrictive covenants. The trial court granted the association's motion, concluding the covenants were still in force and that they prohibited the construction of the deck without the association's consent. The court certified its judgment as final pursuant to C.R.C.P. 54(b), and defendant filed this appeal.

I.

As pertinent here, the parties' agreement provides:

The conditions, restrictions and covenants contained in this Article III may be amended or terminated at any time by recording in the Real Property Records of Routt County of the executed and acknowledged consent to such amendment or termination by the owner of the Parcel and the Association, and *shall terminate automatically when (i) the Association shall legally dissolve,* or (ii) the Condominium Declaration for Ski Time Square Condominium shall terminate according to its terms.

(Emphasis added.)

The Condominium Declaration terminates "upon the unanimous written approval of all owners and all lienors or upon the sale of the real property as a result of destruction, obsolescence, or the building being taken for a public or quasi-public use."

Defendant contends that, pursuant to the provision that the covenants end if the association "shall legally dissolve," the association's administrative dissolution automatically terminated the covenant at issue here. We disagree.

## A.

■ Construction of a covenant is a question of law that we review de novo. *See Buick v. Highland Meadow Estates at Castle Peak Ranch, Inc.*, 21 P.3d 860, 862 (Colo. 2001).

■ The termination provision is a component of the covenant. Thus, we interpret it generally in accordance with principles of covenant construction. *See Evergreen Highlands Ass'n v. West*, 73 P.3d 1, 3 (Colo.2003) (applying principles of covenant construction to a covenant's modification clause); *Schneider v. Drake*, 44 P.3d 256, 259 (Colo. App.2001) (applying principles of covenant construction to a covenant's amendment clause).

■ We construe covenants as a whole, keeping in mind their underlying purpose. *See Buick v. Highland Meadow Estates at Castle Peak Ranch, Inc., supra*, 21 P.3d at 862.

■ We are not convinced that a termination component of a covenant requires narrow construction, as defendant contends. *See, e.g.*, § 38–34–103, C.R.S.2004 ("[b]uilding restrictions and all restrictions as to the use or occupancy of real property shall be strictly construed"). Furthermore, where, as here,

> the express language of a restrictive covenant upon land is ambiguous and uncertain in its application to the facts, the intention of the parties to the covenants is controlling, and, if possible, that intention is to be ascertained from the entire language of the covenant agreement in connection with the subject matter of the covenants.

*Becker v. Arnfeld*, 171 Colo. 256, 259, 466 P.2d 479, 480 (1970).

## B.

■ The phrase "legally dissolve" is not defined and does not appear elsewhere in the parties' agreement. In the trial court, defendant argued that, because "legal" means "according to law," and because an "administrative dissolution" is a lawful way of "dissolving" a corporation, the term "legally dissolve" must include an administrative dissolution. In response, the association pointed out that, at the time of the agreement, the term "dissolution" was not used to describe an administrative sanction imposed for failure to follow certain statutory requirements. The association contended that the parties could neither have contemplated nor intended that a temporary suspension would automatically terminate the restrictive covenants. The trial court determined that the term "legally dissolve" was ambiguous and ruled in favor of the association. We agree with the trial court.

In 2001, under the version of the nonprofit corporation code applicable when the association was administratively dissolved, a corporation was subject to "administrative dissolution" for failure to comply with certain statutory requirements, such as filing periodic reports or paying applicable taxes. *See* Colo. Sess. Laws 2000, ch. 220, § 7–134–201 at 985 (now codified with amendments as § 7–134–201, C.R.S.2004). An administratively dissolved corporation could apply for reinstatement if it had eliminated the grounds for dissolution, as occurred here. *See* Colo. Sess. Laws 1997, ch. 155, § 7–134–203(1) at 727 (now repealed) (application for reinstatement of nonprofit corporation must be within five years of the effective date of dissolution).

However, in 1974, when the agreement was entered into, the term "administrative dissolution" was not used to refer to a corporation that had failed to satisfy such statutory requirements and deemed not competent to transact business. Instead, such corporations were referred to as "defunct," *see* Colo. Sess. Laws 1965, ch. 109, § 31–10–9 at 439, which was uniformly interpreted to refer to suspension, not dissolution, of the corporate entity. *See Bokel v. Zitnik*, 93 Colo. 565, 567, 27 P.2d 753, 753 (1933) (explaining that it is "intended, not to effect a dissolution of a corporation ... but merely to suspend its operation while it is in default"); *see also People v. Zimbelman*, 194 Colo. 384, 387, 572 P.2d 830, 832–33 (1977); *Dominion Oil Co. v. Lamb*, 119 Colo. 62, 201 P.2d 372 (1948); *Ruth v. Devany*, 84 Colo. 476, 271 P. 623 (1928); *Smith v. Highland Mary Mining, Milling & Power Co.*, 82 Colo. 288, 259 P.

1025 (1927). Such "defunct" corporations could also apply for reinstatement and would, upon reinstatement, be considered to have had a continuous existence. *See Smith Office Serv., Inc. v. Kelley,* 762 P.2d 791 (Colo. App.1988); *Rocky Mountain Sales & Serv., Inc. v. Havana RV, Inc.,* 635 P.2d 935, 937 (Colo.App.1981).

Furthermore, although not appearing in modern Colorado case law or statutes, the phrase "legal dissolution" was used in early appellate cases, but in reference only to the final termination of formal business entities, not the temporary dissolution, suspension, or winding up period following dissolution. For example, in *Gibson v. Glover,* 3 Colo.App. 506, 508, 34 P. 687, 688 (1893), the court used the phrase "legally dissolved" in reference to a partnership that was completely terminated. *See also George v. Shepard,* 117 Colo. 135, 141, 184 P.2d 473, 475 (1947); *Virginia Canon Toll Road Co. v. People,* 22 Colo. 429, 433, 45 P. 398, 399 (1896) (referring to an expired corporation as being "legally dissolved"); *Michael v. Tracy,* 15 Colo.App. 312, 313, 62 P. 1048, 1048 (1900) (using term "legal dissolution" to refer to final termination of partnership); *Tarabino v. Nicoli,* 5 Colo.App. 545, 553, 39 P. 362, 365 (1895) (using term "full legal dissolution" to refer to final termination of partnership where no further obligations on partners remained).

Defendant contends, nevertheless, that when the parties agreed to automatic termination of the covenants upon the association's "legal dissolution," they necessarily accepted that they would be bound by any changes in the nonprofit corporation code, regardless whether such changes were anticipated at the time. However, even accepting this assertion, there still is no such term as "legally dissolve" in the nonprofit corporation code. Thus, that an "administrative dissolution" is now "legal," does not remove the uncertainty as to the parties' use of the term "legal dissolution" in 1974.

Accordingly, contrary to defendant's contention, to discern the parties' intent in their use of the term "legally dissolve," we consider it important that there was no sanction of "administrative dissolution" at that time; the administrative sanction that did exist "suspended" but did not "terminate" the corporation; and Colorado case law described as "legally dissolved" only those entities that no longer existed.

Furthermore, we must read the agreement's termination provisions in light of the undisputed purpose of the covenants, to provide to the condominium owners the benefit of an unimproved parcel in front of their building. In that context, we ascertain that the parties intended the covenants to terminate only when the condominium owners agreed, or when the covenants were no longer needed, that is, when there were no longer condominium owners to protect. Accordingly, the "legal dissolution" of the association triggers automatic termination of the covenants only when, by such dissolution, the association permanently ceases to exist.

This conclusion is also supported by the plain language of the other termination provisions in the agreement that are not at issue here. Article III, section 1(g) provides for termination of the covenants upon consent. Article III, section 1(g)(ii) states that the covenants automatically terminate when "the Condominium Declaration for Ski Time Square Condominium terminates," that is, when there is no longer a condominium development and, as a result, no condominium association in existence.

Thus, reading the termination provision in proper context, we conclude that an interpretation of the phrase "legally dissolve" to refer to a temporary dissolution of the association, as defendant contends, would be incongruous. The parties did not intend that, absent consent, the protection of the covenants would disappear while the condominium development and its association continued to exist.

Accordingly, we agree with the determination of the trial court, albeit on slightly different reasoning, that the covenants are still in force and that, because defendant did not obtain the association's consent, construction of the deck was prohibited.

## II.

The record indicates that the trial court has not yet ruled on the association's motion

for an award of attorney fees pursuant to the terms of the parties' agreement. Thus, we remand to the trial court for consideration of the association's request for attorney fees, including the request for an award of fees for the defense of this appeal. *See* C.A.R. 39.5 (appellate court has discretion to remand attorney fees issues to trial court).

Based on our disposition, we do not address any of the remaining issues raised by the parties.

The judgment is affirmed, and the case is remanded for further proceedings consistent with this opinion.

Judge STERNBERG * and Judge NEY * concur.