24CA0807 Cuerna Verde v Adams 04-24-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0807
Pueblo County District Court No. 21CV30177
Honorable Gregory J. Styduhar, Judge

The Cuerna Verde Association,

Plaintiff-Appellee,

v.

Alva Adams,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Schock and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 24, 2025

Orona Garcia & Galves, PC, Richard A. Orona, Fred Galves, Pueblo, Colorado, for Plaintiff-Appellee

Kwitek McMillan P.C., Douglas J. Kwitek, Pueblo, Colorado, for Defendant-Appellant

¶ 1     Defendant, Alva Adams, appeals the trial court's judgment in favor of plaintiff, the Cuerna Verde Association.  We affirm.

## I.     Background

¶ 2     The Cuerna Verde Association (Cuerna Verde) is a Colorado nonprofit corporation and homeowners association.  Cuerna Verde was established in 1913 by a group of Pueblo businessmen who joined together to purchase a former dairy farm.  Cuerna Verde owns and manages 240 acres of forested land located outside of Rye.

¶ 3     Membership in Cuerna Verde is established through the ownership of a residence in the Cuerna Verde Pines subdivision located on the land.  Cuerna Verde's bylaws (the Bylaws) provide, "A bill of sale for a house shall specify that the transfer of ownership of the house and the membership are being made and should be filed with the Pueblo County Clerk and Recorder."  Members own their residences but not the land below or around their residences.  The Bylaws further state,

> All residences or other improvements
> belonging to the members are hereby declared
> to be personal property, even though the same
> might be attached to the land.  Upon the

1

> transfer of a membership, whether by inheritance, intra-family succession, or by sale, it is expressly understood that the transaction is a transfer or sale of a member's personal property only, and does not include any land . . . .

When a residence is sold and membership is passed, Cuerna Verde employs an attorney to draft a bill of sale, and a certificate of membership is issued to the new member. According to Geoff Withers, former president of the Board of Directors of Cuerna Verde (the Board), a list of the members is maintained by the Board, and the owners collectively agree on the accuracy of the list.

¶ 4 Members must pay fees semiannually. Membership entitles all members and their families and house guests to all the privileges and amenities of Cuerna Verde Pines. These amenities include water, sewers, roads, tennis courts, a swimming pool, and horse fields. If a member fails to pay their fees within thirty days of the due date, their account is considered delinquent. A member who is delinquent for over two months is considered to have forfeited their membership privileges. An interest charge of eighteen percent per year, compounded semiannually, is assessed on the unpaid balance of a delinquent account.

¶ 5     Currently, fifteen residences comprise Cuerna Verde Pines. Fourteen are owned by members and one is owned by the caretaker.

¶ 6     Adams owns a house, horse barn, and feeding shed. He inherited one-half interest in the property when his father died in December 1981. He then bought the other one-half interest and has maintained continuous ownership of the property to the present.

¶ 7     In 1977, Cuerna Verde failed to file reinstatement paperwork with the Colorado Secretary of State, who then administratively dissolved the association. Cuerna Verde, however, continued to operate as it always had. In 1993, Adams purportedly "reorganized" Cuerna Verde and named himself as the only member. Two lawsuits ensued between Cuerna Verde and Adams. Eventually, the Pueblo County District Court declared that Cuerna Verde was owned by the members, not Adams alone.

¶ 8     This action arises from an incident that occurred in 2016 when Adams' neighbor, Ms. Baldwin, notified Cory Pool, Cuerna Verde's caretaker, that her water was not working. Pool canvassed

3

Baldwin's yard for leaks. When he did not find any, he went to another neighbor's house and checked their valves. Again, he found nothing. Eventually, Pool found "sopping wet ground" on the east side of Adams' house. Pool was then joined by Baldwin's plumber, Les Coy. Pool dug below ground and found a PVC pipe that was leaking water. Coy disassembled the actuator,[1] owned by Adams, and turned the valve to the off position. Water was then restored.

¶ 9    After the incident, Adams reported to Withers (then president of the Board) that the actuator was inoperative. Withers offered to repair or replace the actuator, but Adams refused to give it to him, claiming it was "evidence." Adams stopped paying his Cuerna Verde membership fees in July 2017.

¶ 10    In March 2018, the Board sent Adams a letter. The letter detailed the 2016 actuator incident and stated that while Adams refused to give the actuator to Withers, Withers had copied the specifications and investigated the possibility of replacing it.

---

[1] An actuator is an electronic machine that turns the valve on and off using an electrical impulse from a remote location.

4

Withers discovered that the model alleged to have been damaged had not been manufactured for over a decade. But he located one with nearly identical specifications on eBay for $400. The Board offered to pay Adams $400 for the actuator's replacement if a reputable electrical shop confirmed it was damaged. The Board acknowledged that Adams told Withers that he was withholding payment of his membership dues until the valve was operable again because he did not trust Cuerna Verde to reimburse him. The Board informed Adams that he owed Cuerna Verde $4,800 in membership dues including a $369 interest fee as required by the Bylaws.

¶ 11    In July 2018, Withers sent Adams a letter urging him to pay his membership dues. This letter detailed Adams' back dues and interest owed. Withers sent another letter in August that said the Board did not believe that the actuator or valve had been damaged. Accordingly, Cuerna Verde would not be paying for the alleged damage. Withers also informed Adams that his delinquent membership dues now amounted to around $7,000.

¶ 12    In June 2019, Withers sent Adams a letter reminding him that Cuerna Verde had elected to maintain the water system lines up to and including a shutoff valve for every house.  Because the only service line in Cuerna Verde that did not have a separate line and valve was the one feeding Adams' house, the members agreed to lay a new service line dedicated to Adams' house with a new valve. Withers informed Adams that if he did not respond, Cuerna Verde would install the new service line and valve to Adams' house, at its expense, and would also install a new valve actuator on Adams' existing service line to replace the one Adams alleged was damaged. Withers also stated that Adams' unpaid dues and interest amounted to $9,485.29.

¶ 13    Adams responded with new allegations regarding the installation of the new service line running to his house.  He alleged that Cuerna Verde had damaged his barn and corral, requiring the removal of his carriage house.  Adams also asserted that he had been trying to obtain cooperation on clearing up title and membership issues for years and that Cuerna Verde had no interest in the land or water in Cuerna Verde Pines.  Adams signed the

6

letter, "The only LEGAL member of Cuerna Verde." Withers later informed Adams that the water shutoff valve had been installed.

¶ 14    In March and April 2020, Adams wrote two letters to Cuerna Verde's attorney, Ray Hughes, who had sent Adams a collection letter on behalf of Cuerna Verde. Adams stated that he had "organized" Cuerna Verde and had never transferred any authority or board of directors' seats to the current members of Cuerna Verde. He also claimed that the members of Cuerna Verde, over his objection, had filed fraudulent documents with the Secretary of State claiming ownership of the corporation and stating that they were corporate officers. Adams wrote that because he was the incorporator, the members of Cuerna Verde violated Colorado law by posing as the incorporators of Cuerna Verde.

¶ 15    Adams also claimed that Cuerna Verde failed to confirm who the owners of the residences were before admitting them as members of Cuerna Verde. In the second letter, Adams said Cuerna Verde members had stolen his corporate identity because he organized Cuerna Verde, and he never held any meetings to surrender his corporate authority or any board seats. Adams said

he was informed that Cuerna Verde was given to the members "by the court," but he claimed this was false because, as the incorporator, he alone had the authority to select the first board.

¶ 16    By July 1, 2020, Adams owed $17,424.74, including interest, on the membership dues. At the membership meeting on July 11, 2020, the members unanimously agreed to suspend Adams' Cuerna Verde privileges for the unpaid dues. Consequently, Cuerna Verde capped and locked the shutoff valve on the service line running to Adams' house, thereby preventing Adams from accessing running water.

¶ 17    In 2021, Cuerna Verde filed suit against Adams for breach of contract and unjust enrichment based on the unpaid membership dues and interest. Adams alleged several affirmative defenses and asserted counterclaims of negligence, trespass, and breach of contract (to protect property and to provide water).

¶ 18    A bench trial was held on November 14 and 15, 2023. The trial court issued a written judgment in favor of Cuerna Verde as to Cuerna Verde's breach of contract claim in the amount of $48,163.93. The trial court also found that the Colorado Common

Interest Ownership Act (CCIOA) did not apply to Cuerna Verde because (1) Cuerna Verde was established before 1992; (2) Cuerna Verde elected not to be governed by CCIOA; and (3) Cuerna Verde never recorded a declaration as required by the statute. The trial court also ruled in favor of Cuerna Verde as to Adams' counterclaims.

¶ 19 On appeal, Adams challenges the trial court's findings that (1) Cuerna Verde did not cease to exist as a corporation following its 1977 administrative dissolution; (2) Cuerna Verde complied with Colorado law with respect to finalizing its legal authority; (3) Cuerna Verde was not subject to CCIOA; (4) Cuerna Verde's Bylaws established an enforceable contract between Cuerna Verde and Adams; and (5) a contractual basis to award attorney fees to Cuerna Verde existed. We address and reject each contention.

II. Corporate Existence and Authority

¶ 20 Adams contends that when Cuerna Verde was administratively dissolved in 1977, Cuerna Verde "could not carry on business afterwards and simply ceased to exist" and, therefore, lacked any corporate authority. We disagree.

## A. Standard of Review and Controlling Law

¶ 21    We review a trial court's judgment entered following a bench trial as a mixed question of fact and law. *State Farm Mut. Auto. Ins. Co. v. Johnson*, 2017 CO 68, ¶ 12. We review legal conclusions de novo, *id.*, and will disturb factual findings only if they are clearly erroneous and not supported by the record. *Jehly v. Brown*, 2014 COA 39, ¶ 8.

¶ 22    An association may be administratively dissolved by the attorney general if it obtained its articles of incorporation through fraud or it has continued to exceed or abuse the authority conferred upon it by law. § 7-134-301(1), C.R.S. 2024. Additionally, administrative dissolution can occur for failure to comply with statutory requirements such as filing periodic reports or paying applicable taxes. *Ski Time Square Condo. Ass'n v. Ski Time Square Enters.*, 119 P.3d 588, 589 (Colo. App. 2005).

## B. Analysis

### 1. Corporate Existence

¶ 23    In his response to the amended complaint, Adams argued that Cuerna Verde lacked standing to bring the action against Adams because (1) it was not the real party in interest, and (2) its present

10

board of directors did not have authority under the articles of incorporation (Articles), Bylaws, and organizational documents to direct the action.

Following trial, the trial court found:

- Cuerna Verde was administratively dissolved by the Colorado Secretary of State in 1977 for failing to file its annual reports.

- No evidence was presented that Cuerna Verde ceased to operate, wind up, or liquidate its business affairs.

- Cuerna Verde has "continuously existed since 1913."

- Two lawsuits, based on Adams' claim that he organized the association in 1993, ensued and were resolved in 1997 when the court "declared that [Cuerna Verde] was owned by its members."

- Despite the administrative dissolution in 1977, the members of Cuerna Verde did not intend to terminate the mutual obligations set forth in Cuerna Verde's Bylaws.

¶ 24    We reject Adams' claim that Cuerna Verde lacked a corporate existence and agree with the trial court that the fact of Cuerna

11

Verde's administrative dissolution in 1977 did not automatically terminate the parties' respective obligations under the Bylaws, for two reasons. First, the record confirms that Cuerna Verde's and its members' actions, including Adams', did not reflect an intent that the obligations provided by the Bylaws would cease to exist while the benefits provided by Cuerna Verde remained. *See Ski Time Square Condo. Ass'n,* 119 P.3d at 591 (Following the association's administrative dissolution, "[t]he parties did not intend that . . . the protection of the covenants would disappear while the condominium development and its association continued to exist."). Indeed, Adams testified that he paid membership dues and received the association's benefits from 1981 (after the administrative dissolution occurred) until he unilaterally ceased paying dues in 2017. Further, Adams presented no evidence that Cuerna Verde took steps to wind up or liquidate its business and affairs. Instead, the Board continued to hold membership meetings, collect dues semiannually, and provide membership services to the Cuerna Verde members. *See id.*

¶ 25    Second, when a nonprofit entity administratively dissolves and continues to operate, as was the case here, the nonprofit is deemed an unincorporated organization that qualifies as a nonprofit association. § 7-137-102(5), C.R.S. 2024 ("Any nonprofit corporate entity formed prior to January 1, 1968, . . . that was suspended, declared defunct, administratively dissolved, or dissolved by operation of law, and continues to operate for nonprofit purposes and does not wind up its business and affairs, shall be deemed an unincorporated organization that qualifies as a nonprofit association as provided in section 7-30-101.1 . . . .").

¶ 26    Accordingly, we discern no error in the trial court's determination that Cuerna Verde's Bylaws remained in force notwithstanding its administrative dissolution. *See id.*

¶ 27    Cuerna Verde asks us to apply the doctrines of claim and issue preclusion to resolve this issue and to hold, under the law of the case, that Cuerna Verde has continuously existed as a matter of law since the 1977 administrative dissolution, based on the 1997 litigation and judgment. We decline to do so because neither party produced any evidence of the specific nature of the prior litigation,

13

aside from general testimony, and the court's judgment is not part of the appellate record. *See Colo. Ass'n of Pub. Emps. v. Colo. Dep't of Pers.*, 991 P.2d 827, 831 (Colo. App. 1999) (our review is limited to the record presented).

## 2. Corporate Authority

¶ 28    In Adams' answer to Cuerna Verde's amended complaint, Adams asserted that Cuerna Verde "lack[ed] standing to bring the action against [Adams] as its present board of directors [did] not have the authority under the Articles, Bylaws, and organization documents to direct the action." Here, Adams argues that (1) corporate existence begins upon incorporation; (2) Cuerna Verde was formed in 1993 by Adams' actions as the organizer; (3) Adams was the only initial director named in the Articles; (4) after he organized Cuerna Verde, Adams did not hold a meeting as required by section 7-122-105(1)(b), C.R.S. 2024; and (5) without holding the required meeting to transfer authority, all corporate actions are void. Adams contends that the trial court should have found that Cuerna Verde failed to finalize its organizational requirements since 1993. At trial, Adams testified:

It's a horror story by itself.  Turnaround, when we went to — when I filed papers for the Secretary of State to reorganize the corporation, we went to court and the court said that the other guys could jiggle, you know, could, we're going to take care of it.  And that means they were supposed to, you know, get — find out who the members are and get all that stuff taken care of.  And my portion was to turn around and as the organizer, I was supposed to hold the first meeting and then turn around and facilitate to a new board the authority acquired from being the organizer.

So I didn't have any on-hands in regards to titles or anything else, but I do feel that in order to be able to hold a meeting of the members, you have to know who the members are.  You need to have provable interest in the houses.  You have to have something that is concrete, that spells it out.

So that, as far as I can see, the houses are not really marketable, you know, without a good title.  And so to protect your own property, it helps to get the thing done.  Well, nobody wanted to do that.

And so, at that point, Mr. Hadley went and claimed he was the president and he went and filed papers with the Secretary of State, all on his own, to basically take control of the corporation.  And at that point, I've never transferred any authority or anything else from that.  I've just sat.  Because to me, it's gotten to a point of being a legal question.  You know, are they legitimate or aren't they?  That's the question.

¶ 29    The trial court found:

> Defendant argues that [Cuerna Verde] lacks
> standing to bring the action against the
> defendant as [Cuerna Verde] is not the real
> party in interest and that its present board of
> directors does not have authority under the
> Articles, Bylaws, and organization documents
> to direct the action.  Again, this defense in
> light of the evidence has no merit.

¶ 30    As the trial court found, Cuerna Verde was incorporated in 1913 and continued to operate, fulfilling its obligations under the Bylaws and providing benefits to members, until the time of this litigation.  And because the association never ceased to exist, there was no need to hold a meeting, as required by section 7-122-105(1), to transfer corporate authority.  In other words, because Cuerna Verde was incorporated in 1913 and continued to operate even after its administrative dissolution, section 7-122-105 is inapplicable to Cuerna Verde and its corporate authority.  Accordingly, Cuerna Verde's corporate actions were authorized.

¶ 31    Adams next argues that the trial court should have found that Cuerna Verde failed to establish its property owners and, therefore, failed to establish its own membership necessary to carry on business.  We disagree and conclude that because Cuerna Verde

16

was incorporated in 1913 and never ceased to operate, Cuerna Verde did not need to establish its membership to hold an initial meeting in 1993.

¶ 32    Accordingly, we conclude that Cuerna Verde retained corporate authority subsequent to its administrative dissolution in 1977.

## III.    Enforceability of Bylaws

¶ 33    Adams next contends that the trial court erred in concluding that Cuerna Verde's Bylaws established an enforceable contract between it and Adams.  We do not address this argument because it is unpreserved.

## A. Controlling Law

¶ 34    "Preservation is a threshold question" because "[w]e do not review issues that have been insufficiently preserved." *Rinker v. Colina-Lee*, 2019 COA 45, ¶ 22.  We do not require "talismanic language" to preserve an issue for appeal.  *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50 (quoting *In re Estate of Owens*, 2017 COA 53, ¶ 21).  For an issue to be preserved, it "must be brought to the trial court's attention and the court must be given the

17

opportunity to rule on it." *Franklin D. Azar & Assocs. P.C. v. Ngo*, 2024 COA 99, ¶ 51.

## B. Analysis

¶ 35 In his opening brief, Adams contends that the trial court erred in concluding that Cuerna Verde's Bylaws established an enforceable contract between him and Curena Verde. But in his answer to Cuerna Verde's amended complaint, he used those same Bylaws to assert multiple counterclaims, including two claims of breach of contract. He argued that Cuerna Verde "had a contractual duty to protect Adams' property from damage due to causes originating on the real property owned by it" and "a contractual obligation to make sure that Adams had unfettered access to fresh water." Moreover, he argued that Cuerna Verde breached those contractual obligations.

¶ 36 The trial court found that the relationship between Cuerna Verde and its members was contractual, "with the members agreeing, by virtue of their membership, to submit to rules and obligations set forth in [Cuerna Verde]'s Bylaws." The court further

18

found that Adams never disputed his obligation to pay assessments under the Bylaws or that a contract existed.

¶ 37    The record shows that Adams never argued, as he does now, that Cuerna Verde's Bylaws did not establish an enforceable contract between Cuerna Verde and himself.  To the contrary, at trial, Adams recognized the existence of a contract between Cuerna Verde and himself and argued that Cuerna Verde had breached the contract by failing to provide him with the required membership services.  Adams argued for the first time, in his motion for reconsideration, that the Bylaws did not establish an enforceable contract.  But arguments raised for the first time in a post-trial motion or motions for reconsideration are not preserved for appellate review.  *Briargate at Seventeenth Ave. Owners Ass'n v. Nelson*, 2021 COA 78M, ¶ 66; *see also People v. Schaufele*, 2014 CO 43, ¶ 49 (Boatright, J., concurring) ("Motions for reconsideration are designed to correct erroneous court rulings; they are not designed to allow parties to present new legal arguments for the first time and then appeal their denial . . . .").

¶ 38    Accordingly, we conclude this contention is unpreserved and do not address it further.

## IV.    Applicability of CCIOA

¶ 39    Adams next contends that the trial court erred by finding that Cuerna Verde is not governed by CCIOA.  Specifically, he argues that (1) Cuerna Verde was incorporated in 1993, and (2) the trial court erred in failing to conclude that Cuerna Verde was subject to CCIOA.  We disagree.

### A. Standard of Review and Applicable Law

¶ 40    We review a trial court's judgment entered following a bench trial as a mixed question of fact and law as set forth above in Part II.A.

¶ 41    By its terms, CCIOA applies only to "all common interest communities created within this state on or after July 1, 1992." § 38-33.3-115, C.R.S. 2024.

¶ 42    A common interest community "may be created . . . only by recording a declaration."  § 38-33.3-201(1)(a), C.R.S. 2024.  "No common interest community is created until the plat or map for the common interest community is recorded."  § 38-33.3-201(1)(b).

### B.    Analysis

¶ 43 As discussed in Part II.B.1, Cuerna Verde was established in 1913 and continuously operated until the time of this litigation. *See Jehly,* ¶ 8 (we will disturb factual findings only if they are clearly erroneous and not supported by the record). Therefore, CCIOA is not applicable to this case. *See Accetta v. Brooks Towers Residences Condo. Ass'n,* 2021 COA 87, ¶ 30 (CCIOA generally does not apply to communities created before its effective date); *see also State Farm Mut. Auto. Ins. Co.,* ¶ 12 (we review the trial court's legal conclusions de novo).

¶ 44 Additionally, a common interest community is "created" for purposes of CCIOA by recording a declaration and a plat or map and conveying the real estate subject to the declaration to the association. § 38-33.3-201(1)(a), (1)(b). The record shows that Cuerna Verde never created or recorded a declaration as required by the statute. *See id.*

¶ 45 Accordingly, we discern no error in the trial court's legal determination that Cuerna Verde is not subject to CCIOA.

## V. Attorney Fees

¶ 46    Adams lastly contends that the trial court erroneously determined there was a contractual basis for an award of attorney fees to Cuerna Verde. Specifically, he reasons that the trial court erroneously determined that the attorney fees provision contained in Cuerna Verde's amended Bylaws could be applied retroactively. We are not persuaded.

### A. Additional Facts

¶ 47    In July 2020, Withers sent Cuerna Verde's members an email regarding the upcoming membership meeting. Withers emphasized that Cuerna Verde needed to adopt a new set of Bylaws so that they could "responsibly pursue the recovery of money that Alva Adams owes [Cuerna Verde]." Withers listed the following agenda items: "[d]iscussion and decision of suspending Alva Adams' membership privileges for failure to pay his dues for this fourth year, the accrual of which now has reached nearly $18,000 and [d]iscussion of the need for a special assessment to cover the cost of attorney's fees to pursue legal action for collection of Alva's dues."

¶ 48    At the July 11, 2020, membership meeting, Cuerna Verde amended its Bylaws to include the following:

The annual and special assessments, together with interest, costs, and reasonable attorney fees incurred by [Cuerna Verde] in collecting such assessments, constitute a continuing lien on the membership and improvements (including the home) of the delinquent Members.

. . . .

If the Board of Directors determines by majority vote that a lawsuit is unwarranted or unnecessary to resolve a dispute, and the Court rules in favor of [Cuerna Verde] in any proceeding, the member who initiated the litigation will reimburse the costs of [Cuerna Verde].

¶ 49   In Adams' proposed trial management order, Adams alleged the following affirmative defenses:

The Plaintiff's Bylaws and policies lack a legal basis for the Plaintiff to pursue some of the damages sought in its Complaint.

The Plaintiff failed to request attorney's fees against the defendant in its Complaint, and the Bylaws of the Plaintiff did not provide for an award of attorney's fees to the Plaintiff when the dispute between the parties began, but were amended subsequently thereto, and should not be allowed.

¶ 50   The trial court found:

As a result of inheritance, use, and occupancy of the Residence, Defendant became a member of [Cuerna Verde].  Accordingly, he is subject

23

to [Cuerna Verde's] Bylaws. The relationship between [Cuerna Verde] and its members is contractual, with the members agreeing, by virtue of their membership, to submit to rules and obligations set forth in [Cuerna Verde]'s Bylaws.

¶ 51 In its conclusions of law, the trial court found that (1) the Bylaws included the attorney fees provision when the action was commenced; (2) Cuerna Verde requested an award of costs in its amended complaint; and (3) attorney fees should be treated as costs.

## B. Standard of Review and Applicable Law

¶ 52 We review a trial court's judgment entered following a bench trial as a mixed question of fact and law as set forth above in Part II.A.

¶ 53 Whether a contract authorizes an attorney fees award is a question of law that we review de novo. *Butler v. Lembeck*, 182 P.3d 1185, 1188 (Colo. App. 2007). The party requesting attorney fees has the burden of proving that it is entitled to them. *Anderson v. Pursell*, 244 P.3d 1188, 1194 (Colo. 2010).

¶ 54 Colorado follows the American rule, which requires each party in a lawsuit to bear its own attorney fees. *Allstate Ins. Co. v. Huizar*,

52 P.3d 816, 818 (Colo. 2002). Absent an express statute, court rule, or contract to the contrary, attorney fees are generally not recoverable by the prevailing party in a contact action. *Id.*

¶ 55    However, parties to a contract may agree to a fee-shifting provision. *W. Stone & Metal Corp. v. DIG HP1, LLC*, 2020 COA 58, ¶ 7. In general, contractual fee-shifting provisions are valid under Colorado law. *Morris v. Belfor USA Grp., Inc.*, 201 P.3d 1253, 1260 (Colo. App. 2008). Because we interpret a contract according to the plain and ordinary meaning of its terms, we similarly interpret fee-shifting provisions in a "common sense manner." *Id.* at 1259 (quoting *Butler*, 182 P.3d at 1189). No "formulaic language" is required to constitute a valid fee-shifting provision, so long as the provision "clearly informs the parties that a breach . . . may result in an award of attorney fees." *Id.* at 1260 (quoting *Butler*, 182 P.3d at 1189.) The fee-shifting provision must "specifically refer" to attorney fees to be valid. *Id.* (quoting *Butler*, 182 P.3d at 1189-90).

¶ 56    When a contract contains a valid fee-shifting provision, the prevailing party will be entitled to recover its attorney fees. *Wheeler v. T.L. Roofing, Inc.*, 74 P.3d 499, 503 (Colo. App. 2003).

## C. Analysis

¶ 57    We discern no error in the court's finding that a contractual basis for an award of attorney fees existed because the record supports it. *See Jehly*, ¶ 8 (we will disturb factual findings only if they are clearly erroneous and not supported by the record). The Bylaws set forth the responsibilities of Cuerna Verde and its members. The members agree to submit to the rules and obligations set forth in the Bylaws and to pay membership dues in exchange for the amenities that Cuerna Verde provides. The Bylaws specifically state that members "will be subject to the terms and provisions of the Articles of Incorporation and Bylaws of [Cuerna Verde], the actions of the board of Directors, and all rules and regulations which are or may be formulated to regulate [Cuerna Verde], its Members, and its employees." Further, the Bylaws lay out the rights of members to enjoy the privileges of Cuerna Verde so long as they pay membership dues. Adams conceded at trial that when he acquired his house in Cuerna Verde, he understood that there were Bylaws and restrictions associated with the ownership of

his house.  Moreover, he never disputed that the Bylaws required him to pay membership dues.

¶ 58  We are unpersuaded by Adams' argument that the Bylaws could not be amended by Cuerna Verde without *his* express consent.  Contrary to this assertion, the Bylaws provide that Cuerna Verde may "alter, amend, or repeal these Bylaws, and may adopt new Bylaws by a two-third vote."  At the July 22, 2020, membership meeting, the members unanimously approved the changes to Cuerna Verde's Bylaws that allowed Cuerna Verde to request reimbursement for attorney fees and costs of litigation when successful in court proceedings.  *See Reishus v. Bullmasters, LLC*, 2016 COA 82, ¶¶ 33-34 (enforcing co-ownership agreement provision that provided that the agreement could be amended with the approval of "at least 7/12ths of the Ownership Interests").

¶ 59  Additionally, we agree with Cuerna Verde that it was entitled, under the Bylaws, to its reasonable attorney fees incurred in collecting unpaid assessments.  Like *Butler*, Cuerna Verde's Bylaws do not contain typical language that provides for attorney fees to "the prevailing party."  182 P.3d at 1189.  However, the fee-shifting

27

agreement provided in the Bylaws refers specifically to attorney fees and, therefore, put both parties on notice that Cuerna Verde was entitled to reasonable attorney fees when attempting to collect unpaid assessments. *See id.* at 1189-90. Accordingly, we conclude that an award of attorney fees was authorized by the Bylaws.

¶ 60 Adams further argues that the amendment to the Bylaws is an ex-post facto law that is unenforceable. We are not persuaded for two reasons. First, Cuerna Verde filed its amended complaint on February 12, 2021, almost a year after amending its Bylaws to include the attorney fees amendments. The amendments, therefore, were not applied retroactively because they were enacted before the commencement of this litigation.

¶ 61 Second, article II, section 11, of the Colorado Constitution provides, "No ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation . . . shall be passed by the general assembly." Here, Cuerna Verde is not the General Assembly, and the amendments do not constitute a law. Therefore, Adams' ex-post facto argument lacks merit.

¶ 62    Finally, Cuerna Verde requests an award of appellate attorney fees by relying on *Accetta,* ¶¶ 65-66.  In *Accetta,* another division of this court concluded that section 38-33.3-123(1)(c), C.R.S. 2020, required an award of appellate attorney fees to the prevailing party even though the prevailing party was not governed by CCIOA. *Accetta,* ¶¶ 65-66.  The court reasoned that appellate attorney fees were required because the non-prevailing party brought the action to enforce CCIOA's provisions.  *Id.*  Cuerna Verde's reliance on *Accetta* is misplaced.  Adams did not allege in his answer that CCOIA applied nor did he assert any action to enforce CCIOA's provisions.  Therefore, we reject Cuerna Verde's request for appellate attorney fees.[2]

## VI.    Disposition

¶ 63    The judgment is affirmed.

JUDGE SCHOCK and JUDGE SULLIVAN concur.

---

[2] Adams asserts that Cuerna Verde did not ask for attorney fees in its amended complaint.  However, the trial court found that Cuerna Verde did request attorney fees.  Because the amended complaint is not part of the record, we must presume the trial court's findings are correct.  *See Hock v. N.Y. Life Ins. Co.,* 876 P.2d 1242, 1252 (Colo. 1994).